**Debra OOSTENDORP,
Plaintiff–Appellant,**

v.

**Trilok S. KHANNA, Janesville Medical Center, Ltd., and Wisconsin Patient's Compensation Fund, Defendants–Appellees.**

No. 90–2629.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1991.

Decided July 15, 1991.

As Amended July 18, 1991.

James P. Ginzkey, Mirza & Associates, Bloomington, Ill., for plaintiff-appellant.

Catherine M. Rottier, Boardman, Suhr, Curry & Field, Madison, Wis., for defendants-appellees.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff Debra Oostendorp sued the defendants for negligence following gall bladder surgery in 1986. The jury found for the defendants. Oostendorp appeals, citing as error (1) the district court's order that the parties summarize in five pages or less any deposition testimony they wished to present at trial; (2) the court's failure to require the defense to prove up its attempt

to impeach the plaintiff's testimony; (3) the court's admission of evidence concerning the plaintiff's medical condition prior to and after the surgery; and (4) the district court's sua sponte decision to fine plaintiff's counsel for failing to have witnesses ready to testify on schedule and for failing to file motions in limine and jury instructions in a timely fashion. We affirm.

## I.

The district court's order prior to the final pre-trial conference in this case stated, in part:

> Extensive (i.e., more than 5 pages) reading from depositions will not be permitted. Rather, the proponent of a deposition must prepare a written narrative summary of a deposition the party intends to offer.

The parties agree that implicit in the district court's order was the requirement that each deposition summary be limited to five pages, an interpretation borne out by *Nigh v. Dow Chemical Co.*, 634 F.Supp. 1513 (W.D.Wis.1986), in which Judge Shabaz explained the summarization requirement he imposes in civil cases:

> Instead of allowing counsel to read thousands of pages of deposition testimony to the jury, this Court requires that a deposition be reduced to a five-page narrative summary, with an appropriate response from the other parties.

*Id.* at 1519. Plaintiff's counsel objected to this procedure before trial, and refused to summarize the depositions of two witnesses, Doctors Michael Sarr and Myron Denney, he intended to present at trial. The district court therefore barred Oostendorp from introducing their deposition testimony at trial, a ruling she claims contravenes FED.R.CIV.P. 32(a)(3)(B), the due process clause of the fifth amendment, and her seventh amendment right to a jury trial.

To begin, we note that Oostendorp did not attempt to comply with the district court's procedure. She made no attempt to show why the district court's requirement

was unreasonable as applied to the depositions she wished to offer in this case,[1] nor did she offer any objections to the content of the deposition summaries prepared by the defendants. As plaintiff's counsel confirmed at oral argument, he declined to propose any modifications to the district court's order because he objected to the requirement that depositions be summarized in any fashion. Plaintiff's beef, then, is not with the district court's application of the rule but with the rule itself; she makes a facial challenge to the district court's deposition summary procedure. Although we might question the validity of an overly rigid application of the district court's requirement (the district court should be willing to consider increasing the five-page limit in appropriate cases), we have not been presented with such a claim here. At oral argument, plaintiff's counsel rejected our invitation to cast the claim in terms of an abuse of discretion and we must therefore consider not whether it was reasonable to require Oostendorp to summarize the Sarr and Denney depositions in five pages, but only whether the district court may require such summaries as a general matter.

In this focus, plaintiff's claim is without merit. Rule 32 of the Federal Rules of Civil Procedure permits the use of depositions in civil cases, but contrary to the plaintiff's assertion that deposition testimony must be admitted when offered, the decision to admit deposition testimony is within the sound discretion of the district court. *Rascon v. Hardiman*, 803 F.2d 269, 277 (7th Cir.1986). It follows that the court may control the manner in which deposition testimony is presented; indeed, trial courts are charged to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth [and to] avoid needless consumption of time...." FED.R.EVID. 611(a). The district court adopted its rule to serve these objectives, and we agree

---

1. On appeal, Oostendorp submits that the deposition testimony of Dr. Sarr was ambiguous, and therefore unsuited to summarization. She did not, however, make this point before the district court.

that requiring deposition summaries can be a reasonable means of implementing the mandate of Rule 611. We therefore conclude that the district court's requirement was not an abuse of its discretionary authority to regulate the conduct of civil trials. *Accord Walker v. Action Indus.*, 802 F.2d 703, 712 (4th Cir.1986); *Kingsley v. Baker/Beech–Nut Corp.*, 546 F.2d 1136, 1141 (5th Cir.1977); *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F.Supp. 1493, 1503–04 (D.Colo.1989); *see also* MANUAL FOR COMPLEX LITIGATION, SECOND, § 22.332 at 138–39 (1985).

■ Plaintiff's attempt to ground her objection in the Constitution borders on the frivolous. Neither the due process clause nor the seventh amendment *requires* courts to admit deposition testimony; indeed, the more common argument is that the Constitution forbids the substitution of depositions for the live testimony of witnesses. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), on which plaintiff mistakenly relies, is just such a case. In *Jenkins*, the Court invalidated a state statute that created a commission empowered to investigate and make findings of fact concerning the possible violation of state and federal labor laws. The statute restricted the right of persons investigated to call witnesses to testify in their behalf in what amounted to a criminal proceeding, permitting only the presentation of written statements from such witnesses. That restriction violated due process. 395 U.S. at 429, 89 S.Ct. at 1852–53. *Jenkins* offers scant support, however, for plaintiff's position. She was not denied the right to call witnesses; rather, she opted to present deposition testimony rather than testimony from a witness in court. *Jenkins* imposes no requirement, constitutional or otherwise, that parties must be permitted to substitute verbatim deposition testimony for live testimony. Plaintiff's counsel conceded at oral argument that he knew of no case imposing such a requirement; we know of none either. The due process clause gives parties to litigation the right to present evidence; the seventh amendment gives them the right to do so in front of a jury. Neither

provision, however, gives litigants license to prolong trials needlessly; neither deprives courts of their authority to regulate the conduct of the trial. As long as the procedures utilized by the trial courts are fair, there is no conflict with either constitutional provision. Since there is nothing inherently unfair in requiring the parties to summarize deposition testimony—*compare, e.g., Kingsley, supra,* in which the objection was that the court required *the other party* to summarize the deposition testimony of a witness—we hold that the rule imposed by the district court in this case does not offend the due process clause or the seventh amendment.

## II.

■ Oostendorp testified that she experienced recurring pain following the gall bladder surgery Dr. Khanna performed in 1986. During cross-examination of the plaintiff, defendants' counsel attempted to impeach Oostendorp's testimony, asking whether Oostendorp had ever told a Dr. Golden of Rush–Presbyterian Hospital in Chicago, who treated her in 1989, that her pain began after she had a hysterectomy earlier that year. She denied making the statement, and when the defendants completed their case without calling Dr. Golden, Oostendorp objected that the defendants had failed to prove up their impeachment. We agree with Oostendorp that it would have been error for the trial court not to require the defense to complete its impeachment had she asked the court to do so. She did not. After objecting, her counsel informed the court that he wanted to consult with Oostendorp and her husband (who was also a plaintiff at trial but is not a party to this appeal) about "how they want to proceed." Tr. at 530. At that point, the court recessed for a few minutes. When the court reconvened, plaintiff's counsel recalled Oostendorp to the stand to deny that she had ever made the statement in question to Dr. Golden. The record does not reveal, however, that after the recess Oostendorp ever requested that the defense introduce the basis for its impeachment or that the district court require them

to do so. In these circumstances, we believe it was incumbent upon plaintiff's counsel to advise the court after the recess whether he wished to maintain his objection. He said nothing, however, and we can only surmise that after consultation with his clients, he concluded that their interests were best served by not pursuing the matter. The defendants could have easily supported the impeachment—Dr. Golden recorded the statement in a hospital discharge summary—and forcing the defendants to present the discharge statement would have only bolstered their impeachment of the plaintiff (cross-examiners typically complain when they are not permitted to prove up impeachment and must live with the witness's answer). We therefore conclude that the district court committed no error by not requiring the defendants to prove up their impeachment of the plaintiff. Cross-examiners must have a good faith basis for their questions, *United States v. Elizondo*, 920 F.2d 1308, 1313 (7th Cir.1990), but do not have an affirmative duty to introduce the factual predicate for impeachment. *United States v. Jungles*, 903 F.2d 468, 478 (7th Cir.1990); *United States v. Harris*, 542 F.2d 1283, 1307 (7th Cir.1976); *United States v. Goff*, 430 F.2d 396 (7th Cir.1970).

### III.

Plaintiff's third claim of error relates to evidence, including Dr. Golden's statement discussed above, concerning the plaintiff's medical history before and after the gall bladder surgery performed by Dr. Khanna. Before trial, the plaintiff filed a motion in limine to preclude the defense from presenting evidence relating to her medical condition prior to 1986. Plaintiff's motion was predicated upon Dr. Khanna's deposition testimony, later repeated at trial, that no preexisting condition affected the outcome of the gall bladder surgery. That admission, plaintiff maintained, made evidence about prior operations irrelevant, and consequently she had not pursued discovery of evidence relating to the prior procedures. The district court, however, believed that the plaintiff's motion was directed only at the testimony of Dr. Hart-

wick, a defense expert who opined during his deposition that the condition that caused the plaintiff's pain predated the gall bladder operation. The defendants had not disclosed Dr. Hartwick to the plaintiff in a timely fashion, and the district court interpreted the motion as a request to bar testimony from Dr. Hartwick about plaintiff's prior medical conditions.

When the defense sought to impeach Oostendorp with the statement recorded in Dr. Golden's discharge summary, the district court allowed the question, concluding that plaintiff ought to have been aware of the statement, discovery or no, because it was an admission. That assumes, of course, that Oostendorp made the statement, a fact she denies. If she never made the statement, only discovery would have revealed it to her attorney. Nevertheless, permitting the question was not error. Whatever the inconsistencies in the district court's interpretation of the motion in limine, the fact remains that evidence suggesting that Oostendorp's pain stemmed not from the gall bladder surgery in 1986 but from an earlier procedure is highly relevant to the issue of whether the gall bladder surgery was performed negligently. Plaintiff's counsel opted not to conduct the necessary discovery because, in his view, Dr. Khanna's admission that "none of Mrs. Oostendorp's prior conditions contributed at all to the outcome of the gall bladder surgery," Tr. at 113, rendered evidence about prior operations irrelevant. We do not read this statement as a concession that none of Oostendorp's previous operations could have contributed to the pain she experienced after the gall bladder surgery. Even if it were such an admission, it would not render evidence relating to the plaintiff's prior medical condition irrelevant any more than Mrs. Oostendorp's admission, recorded in Dr. Golden's discharge summary, would have. Neither party stipulated to the effect of the earlier operations, and Oostendorp's counsel was not justified in relying on Dr. Khanna's statement to relieve him of the task of reviewing the evidence relating to those operations. An admission, however

probative, does not negate the relevance of other evidence relating to the same element of a cause of action.

■ Plaintiff also objects that two other statements about prior operations elicited by the defense violated the motion in limine. Dr. Khanna testified that he performed a gastric bypass procedure on the plaintiff in 1981, and Dr. Job, who assisted Dr. Khanna on the gall bladder surgery at issue in this case, testified that he had performed a hysterectomy on the plaintiff in 1986. The district court responded to the plaintiff's objections by noting that this testimony provided pertinent background information to the jury. We see no abuse of discretion in that conclusion; the prior surgeries explained the plaintiff's prior relationship with these doctors and why she employed them for her gall bladder procedure in 1986. As the court noted, the defendants did not introduce these statements to argue that the prior surgical procedures were responsible for the medical problems Oostendorp experienced after the gall bladder surgery. Neither physician testified that the prior operations had any effect on the gall bladder surgery and the defense made no argument to that effect to the jury (its impeachment of Oostendorp with Dr. Golden's discharge summary notwithstanding). As we have noted, these facts were also relevant to the issue of causation, but the district court had no occasion to address relevancy in view of his determination that the statements provided permissible background information.

■ The plaintiff also objected to questions put by the defense to Dr. Khanna on direct examination and to the plaintiff's expert, Dr. Lans, on cross examination, concerning a surgical procedure Oostendorp underwent at the Mayo Clinic seven months after her gall bladder surgery to repair damage to the plaintiff's biliary tree. Plaintiff introduced evidence that following her gall bladder surgery her blood pressure and hemoglobin count dropped to prove that she had suffered a great deal of blood loss during the operation. To counter this evidence, the defense sought to demonstrate that plaintiff experienced similar post-operative symptoms after the Mayo Clinic procedure, in which even the plaintiff's expert Dr. Lans conceded there had been little blood loss. Plaintiff objected that testimony concerning the subsequent procedure was irrelevant; the district court sustained some of the plaintiff's objections, but overruled others, a fact she claims underscores the arbitrary nature of its decision to admit any of this evidence.

We agree with plaintiff that the district court's rulings on her objections were not entirely consistent. We do not agree, however, that she was harmed by the inconsistency, as we believe that the entire line of questioning was permissible to impeach the credibility of Dr. Lans. His opinion that the plaintiff lost an unusually large quantity of blood during her gall bladder surgery was based essentially on three facts: (1) that the plaintiff's hemoglobin level dropped to 9 grams the day after surgery and that she received three units of packed blood cells to remedy the problem; (2) that her pulse elevated to over 100 beats per minute; and (3) that her systolic blood pressure dropped to 60 shortly after the operation. Had the defendants been permitted to show that following another operation in which Oostendorp had lost little blood that (1) she required not three but four units of packed blood cells the next day; (2) that her pulse elevated to 130 beats per minute; and (3) that her systolic blood pressure dropped to 80, Dr. Lans' opinion about whether blood loss occurred during the gall bladder operation would have been undermined. Since plaintiff actually benefitted from the district court's rulings—harmful evidence that might have been admitted was excluded—we see no merit to this claim of error.

## IV.

■ The district court imposed $600 in costs against plaintiff's counsel because he failed to have witnesses available to testify on the afternoon of the first day of trial. Plaintiff's counsel explains that he did not have any other witnesses available to testify that day because, notwithstanding the district court's pretrial order precluding

him from doing so, he planned to present the deposition testimony of Doctors Sarr and Denney. Counsel knew that he would not be permitted to read the depositions into evidence, and should have been prepared to continue with his case after lodging an objection with the court. His petulant disregard for the court's order warranted a sanction, and the moderate levy imposed by the court was hardly an abuse of discretion.

The district court also ordered plaintiff's counsel to pay $300 in attorney's fees because he failed to submit proposed jury instructions and his motion in limine on time, necessitating an early morning conference before the first day of trial. Counsel's only excuse was his involvement in another trial in Peoria, Illinois, but he had known of that conflict for seven months before he ever moved for a continuance in this case, and for nine months before the trial began. Under these circumstances, the conflict was not a reasonable excuse for the late filings and the district court's sanction was appropriate.

V.

The judgment for the defendants-appellees and the costs and sanctions assessed by the district court are

AFFIRMED.