Dawn DAIGLE, Plaintiff, Appellant,

v.

MAINE MEDICAL CENTER, INC., Defendant, Appellee.

No. 93–1470.

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1993.

Decided Jan. 31, 1994.

Christine M. Rockefeller, with whom Paul R. Cox and Burns, Bryant, Hinchey, Cox & Schulte, P.A., Dover, NH, were on brief, for plaintiff, appellant.

Gerald F. Petruccelli, with whom Mary Mitchell Friedman and Petruccelli & Martin, Portland, ME, were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

This appeal seeks to test the constitutionality of Maine's Health Security Act, Me.Rev. Stat.Ann. tit. 24, §§ 2851–2859 (West 1990) (the Health Act), the mechanics of its application in diversity suits, and the appropriateness of sundry evidentiary rulings made during the course of trial in the district court. After assembling the test results, we affirm.

## I.

### Background

On or about April 9, 1987, while in her thirty-first week of pregnancy, plaintiff-appellant Dawn Daigle, a New Hampshire resident, developed symptoms associated with pregnancy-induced hypertension. She sought treatment at Frisbie Memorial Hospital, Rochester, New Hampshire. There, Daigle's treating obstetrician advised her that she required an immediate cesarean section. Because Frisbie Memorial Hospital maintained only rudimentary neonatal facilities, the obstetrician suggested that the surgery be performed at a tertiary-care hospital.

Following her doctor's suggestion, Daigle presented herself at Maine Medical Center (MMC) in the early morning hours of April 10, 1987. Examination confirmed her obstetrician's diagnosis and hospital personnel prepared her for immediate surgery. The preparations did not go smoothly: while a catheter was being inserted into the jugular vein to monitor blood pressure and provide access to medications, Daigle's carotid artery was punctured. A hematoma then formed in Daigle's neck, deviating her trachea. Consequently, although the delivery was otherwise successful, the attending physicians were forced to intubate Daigle while she was fully awake. Daigle was discharged from the hospital on April 17, 1987.

## II.

### The Health Act

Because many of the arguments on appeal relate to the Health Act, we offer an overview of the statutory scheme.

The Maine legislature passed the Health Act in response to an emergent crisis that threatened the availability of medical malpractice insurance. The legislature designed the Health Act in an effort to stem the proliferation of medical malpractice litigation, weed out nonmeritorious claims, and promote early settlement of meritorious claims. *See* Me.Rev.Stat.Ann. tit. 24, § 2851(1)(A) & (B); *see also Sullivan v. Johnson,* 628 A.2d 653, 655–56 (Me.1993). By its terms, the Act requires parties to submit medical malpractice claims to a prelitigation screening panel as a condition precedent to court access, unless both sides agree to bypass the panel hearing. *See* Me.Rev.Stat.Ann. tit. 24, § 2853. Each screening panel is composed of a person with judicial experience (such as a retired jurist), an attorney, and either one or two health care professionals, depending on the circumstances of the particular case. *See id.* § 2852(2).

A screening panel is authorized to conduct evidentiary hearings and render a decision. *See id.* §§ 2854–2855. A party who submits to the screening process is entitled to proceed with her court case regardless of the outcome of the panel deliberations. *See id.* § 2858. Withal, the panel's findings (the Findings) are admissible as evidence in subsequent litigation if they are unanimous. *See id.* When admissible, the Findings are to be introduced "without explanation." *Id.* § 2857(1)(B).

### III.

#### Proceedings Below

On June 28, 1988 Daigle sued MMC in the United States District Court for the District of New Hampshire. Invoking diversity jurisdiction, *see* 28 U.S.C. § 1332 (1988), she alleged negligence relating to treatment rendered during her hospital stay. MMC challenged the court's *in personam* jurisdiction, and, failing in its jurisdictional objection, defended on the merits.[1]

In due season, the district court determined that Maine law applied to Daigle's suit and that, therefore, the Health Act pertained. Under the compulsion of that ruling, Daigle first presented her case to a prelitigation screening panel which consisted of a retired jurist, two physicians, and an attorney. After an evidentiary hearing, the panel found no acts of negligence attributable either to MMC or to Daigle's attending physicians at MMC, *viz.,* Dr. Constance Taylor and Dr. David Bryce.[2]

Notwithstanding the panel's adverse decision, Daigle decided to go forward. At trial, the district court, noting the panel's unanimity, allowed the Findings to be introduced into evidence. Thereafter, Daigle attempted to impeach the panel proceedings, but to no avail; the court sustained MMC's objections. The jury returned a verdict in MMC's favor on March 10, 1993. Daigle moved unsuccessfully for a new trial and then appealed. We have jurisdiction under 28 U.S.C. § 1291 (1988).

### IV.

#### Discussion

#### A.

#### The Constitutional Challenges

■ Appellant's main offensive comprises a host of challenges to the constitutionality of the Health Act. She asserts, *inter alia,* that the statute violates principles of equal protection and due process, and also impermissibly abridges her right to trial by jury. Despite this asseverational array, the constitutional sortie need not occupy us for long.

The short of the matter is that appellant failed to raise these claims or otherwise to challenge the constitutionality of the Health Act in the district court. Our law is clear that a party ordinarily may not raise on appeal issues that were not seasonably advanced (and, hence, preserved) below. *See,*

---

1. MMC has cross-appealed from the denial of its motion to dismiss. Given our disposition of Daigle's appeal, *see infra,* nothing turns on the cross-appeal. Hence, we dismiss it by separate order. *Cf. Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 40–41 (1st Cir.1991).

2. Although Daigle did not sue either Dr. Taylor or Dr. Bryce in the federal court, she later sued them in a Maine state court. That suit is still pending.

*e.g., United States v. Slade,* 980 F.2d 27, 30 (1st Cir.1993); *Clauson v. Smith,* 823 F.2d 660, 666 (1st Cir.1987) (collecting cases). The raise-or-waive rule applies with full force to constitutional challenges. *See Cohen v. President & Fellows of Harvard Coll.,* 729 F.2d 59, 60–61 (1st Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).

■ To be sure, the raise-or-waive rule is not totally inelastic; there are exceptions to it, but, for the most part, the exceptions are narrowly configured and sparingly dispensed. We will, for example, relax the rule upon a showing of plain error, *see United States v. Griffin,* 818 F.2d 97, 99–100 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987), but appellant's constitutional claims do not qualify for such treatment. "Plain error" requires the proponent to show that softening the rule is necessary to prevent a clear miscarriage of justice, *see id.* at 100, and the "errors" assigned here are, in all events, likely to prove a losing proposition.[3] We can also relax the rule in an "exceptional case," *United States v. La Guardia,* 902 F.2d 1010, 1013 (1st Cir.1990), but we invoke that exception only when, at a bare minimum, the omitted ground is so compelling as virtually to ensure an appellant's success. *See Slade,* 980 F.2d at 31. Obviously, Daigle cannot clear this hurdle. *See supra* note 3.

We hold, therefore, that appellant's constitutional claims are procedurally defaulted.[4]

**B.**

**The Section 2857 Challenge**

Next, appellant launches a barrage of interrelated reasons aimed at showing why the

district court erred, on evidentiary grounds, in admitting the Findings into evidence. These theories do not withstand scrutiny.

■ **1.** **The Meaning of "Without Explanation".** First, appellant claims that the district court erred in giving literal effect to the Health Act, which provides that unanimous panel decisions, *i.e.,* Findings, may be admitted into evidence at an ensuing trial "without explanation." Me.Rev.Stat.Ann. tit. 24, § 2857. The district court interpreted "without explanation" as preventing either side from eliciting testimony concerning the circumstances of, and deliberative process at, the panel hearing, but as permitting counsel for the parties to comment upon the Findings in opening statements and closing arguments (a prerogative which MMC desired and which appellant would sooner have seen by the wayside).

In arguing that this protocol constitutes error, appellant is whistling past the graveyard. Her position is entirely undone by the recent opinion in *Sullivan v. Johnson,* 628 A.2d 653 (Me.1993), a case in which Maine's Supreme Judicial Court interpreted "without explanation" in precisely the manner that the district judge anticipated. The *Sullivan* court elected to read the statute "as a whole with a view toward effectuating the Legislature's purpose of encouraging pre-trial resolution of these claims." *Id.* at 655–56. Proceeding in this fashion, the court found that because the "Legislature's intent [was] to force final disposition of ... claims [that the panel unanimously determines to be without merit] short of trial," the statutory language only barred "explanation of the panel deliber-

---

**3.** At initial blush, none of appellant's constitutional contentions are convincing. With respect to her claim that the Health Act violates equal protection in requiring only medical malpractice claimants to submit to screening before proceeding to trial, we believe that the statute is rationally related to the legitimate legislative goal of containing the sudden proliferation of medical malpractice litigation. *See Houk v. Furman,* 613 F.Supp. 1022, 1030–33 (D.Me.1985). Appellant's due process and Seventh Amendment claims appear to be even more severely flawed.

**4.** In connection with these claims, appellant also presses an argument that the panel as constituted

was biased, resulting in a fundamentally unfair hearing and, hence, in a violation of her due process rights. Unlike her other constitutional claims, appellant successfully preserved this issue for review. But the bottom line remains unchanged. Assuming, for argument's sake, that the district court possessed the power to entertain appellant's objection to the panel's supposed bias—a matter on which we do not opine—our perscrutation of the record persuades us, beyond serious question, that the district court did not abuse its discretion in denying appellant's motion to set aside the Findings and order a fresh start.

ations or proceedings." *Id.* at 656. In that vein, the court specifically held that "it is permissible for the [parties] to utilize [in opening statements and-or closing arguments] the admissible panel findings as they would any other piece of admissible evidence." *Id.*

■ A federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). So it is here. *Sullivan* categorically disposes of appellant's plaint.

■ *2. The Erie Initiative.* Appellant also contends that the lower court erred, as a matter of federal evidentiary law, both in admitting the Findings into evidence and in foreclosing an opportunity for impeachment. Though recondite, appellant's theory appears to be that section 2857 is a state evidentiary rule and, as such, must give way to the Federal Rules of Evidence in a diversity suit. *See* Fed.R.Evid. 101 (explaining that the federal Evidence Rules "govern proceedings" in federal courts); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Since the panel's determination is hearsay, this thesis goes, the district court bumbled in not requiring MMC first to demonstrate an applicable exclusion or exception to the hearsay rule in order to justify admission of the evidence. And, moreover, appellant remonstrates, even if the Findings were appropriately admitted into evidence, she had a right, under Fed.R.Evid. 806, to impeach the panelists' credibility.[5]

The fatal weakness in appellant's construct lies with her premise that the Health Act's evidentiary strictures are mere procedural rules. Authoritative case law makes clear that federal courts sitting in diversity jurisdiction are obligated to apply state law unless applicable federal procedural rules are sufficiently broad to control a particular issue before the court. *See Walker v. Armco Steel*

*Corp.,* 446 U.S. 740, 749, 100 S.Ct. 1978, 1984, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer,* 380 U.S. 460, 470–71, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965). In *Armco Steel,* for example, the Supreme Court upheld the application of Oklahoma's tolling statute, which required actual service of process, in lieu of Fed.R.Civ.P. 3, which provided that a civil action could be commenced by filing a complaint with the court. *See Armco Steel,* 446 U.S. at 742–44, 100 S.Ct. at 1981–82. The Court noted the state's policy interest in enforcing its statute of limitations and in deferring tolling until a defendant had actual notice of a suit. *See id.* at 751, 100 S.Ct. at 1985. On this basis, the Court reasoned that the Oklahoma statute was a "statement of a substantive decision by that state," forming an " 'integral' part of the several policies served by the statute of limitations." *Id.* at 751–52, 100 S.Ct. at 1985–86. The Court concluded that "[federal] Rule 3 does not replace such policy determinations," but, rather, exists "side by side" with the state statute, "each controlling its own intended sphere of coverage without conflict." *Id.* at 752, 100 S.Ct. at 1986.

The evidentiary provisions of Maine's Health Act are similarly bound up with the state's substantive decision making—in this instance, the state's choice to encourage early, inexpensive resolution of medical malpractice claims. As observed by Maine's highest court in *Sullivan,* directing that unanimous Findings be admitted "without explanation," thereby circumventing a replay of the screening proceeding, is a rational means of ensuring that panel proceedings will not become merely a dress rehearsal, but will serve to encourage final dispositions without the need for jury trials. *See Sullivan,* 628 A.2d at 656. Since the federal Evidence Rules governing hearsay and impeachment do not seek to displace the Health Act's policy of limiting frivolous malpractice suits, the federal rules and the state statute can peacefully coexist, each operating within its own sphere of influence.

---

5. Fed.R.Evid. 806 provides in pertinent part:
 When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may

be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

In short, we see no conflict. Indeed, a refusal to give effect to the Health Act's evidentiary provisions would disserve *Erie* principles by undercutting *Erie*'s twin goals of discouraging forum shopping and eliminating inequitable administration of the law as between federal and state courts.[6] *See Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142; *see also Armco Steel*, 446 U.S. at 751, 100 S.Ct. at 1985 (explaining that a federal court sitting in diversity jurisdiction ordinarily should give effect to the state's "substantive decision[s]").

■ **3.** *Form of Presentation.* Appellant's last objection to the Findings centers on the form of the proffer. She avers that the district court committed reversible error in allowing the Findings, in written form, to be introduced as full exhibits.[7] Although appellant never articulates the theoretical basis for the objection, her central point is apparently that admitting the writings themselves, rather than merely eliciting testimony recounting the Findings, violated Fed. R.Evid. 403.[8] This argument is unavailing.

District courts possess wide latitude in striking a balance under Rule 403 between the probative force and prejudicial impact of relevant evidence. *See Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir.1987) (collecting cases). "Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1340 (1st Cir.1988). The test is abuse of discretion, *see, e.g., Doty v. Sewall*, 908 F.2d 1053, 1058 (1st Cir.1990), and we find no hint of abuse in this situation.

Given the issues in the case, the Findings were highly relevant. The district court, recognizing the evidence's capacity for prejudice, handled it gingerly, redacting the proffered exhibits by removing the official seal of the state superior court and the court caption. Moreover, the court gave an appropriate cautionary instruction to the jury—an instruction to which appellant did not contemporaneously object and to which she does not now assign error. And, because a screening panel's findings do not have independent legal effect outside the paper on which they are recorded, admitting a duly authenticated writing pays appropriate tribute to the best evidence rule. *See* Fed. R.Evid. 1002; *see also R & R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984).

■ On a related topic, appellant also protests that the court transgressed Rule 403 when it allowed MMC to introduce into evidence the Findings that concerned Dr. Bryce and Dr. Taylor (neither of whom was a defendant in the federal suit). We do not think that this ruling constituted an abuse of the court's discretion. Inasmuch as appellant's case against MMC included theories of vicarious liability, the acts and omissions of the two physicians—MMC's agents—were called into direct question, making the disputed evidence squarely relevant to the federal proceedings.

■ We will not paint the lily. All evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it. It is a necessary corollary of this conventional wisdom that evidence cannot be kept from the jury merely because it hurts a party's chances. *See Freeman*, 865 F.2d at 1339;

---

**6.** We note in passing that, *Erie* principles to one side, admitting the Findings into evidence does not seem inconsistent with the Evidence Rules. Since, by statute, screening panels are administered through the superior court, admitting the Findings is analogous to allowing into evidence the report of a master, Fed.R.Civ.P. 53, or the reports of public offices or agencies setting forth factual findings resulting from investigations made pursuant to law, Fed.R.Evid. 803(8)(c), or giving effect to a presumption respecting a fact integral to a claim or defense as to which state law supplies the rule of decision, Fed.R.Evid. 302.

**7.** The panel made separate written Findings as to MMC, Dr. Taylor, and Dr. Bryce. MMC proffered all three documents.

**8.** Fed.R.Evid. 403 provides in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Onujiogu,* 817 F.2d at 6. The element that triggers a need to exclude evidence under Rule 403 is not prejudice, but *unfair* prejudice. *See United States v. Rodriguez–Estrada,* 877 F.2d 153, 156 (1st Cir.1989). No such unfairness lurks in this record.

## C.

### The Deposition

Appellant's final foray is a two-pronged assault directed against the district court's ruling permitting Dr. Bryce's deposition testimony to be placed before the jury. First, appellant argues that MMC failed to establish the doctor's unavailability. Second, she maintains that the testimony should have been excluded because the deposition was incomplete. These incursions lack force.

 1. *Unavailability.* The Civil Rules provide in relevant part that "[t]he deposition of a witness ... may be used by any party for any purpose if the court finds ... the witness is at a greater distance than one hundred miles from the place of trial or hearing." Fed.R.Civ.P. 32(a)(3)(B). In general, the district court has discretion in matters of case management, *see, e.g., Thibeault v. Square D Corp.,* 960 F.2d 239, 242 (1st Cir.1992); *In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1019 (1st Cir.1988), and we think the same deference attaches to the court's rulings under Rule 32. *See Oostendorp v. Khanna,* 937 F.2d 1177, 1179 (7th Cir.1991) (holding that "the decision to admit deposition testimony is within the sound discretion of the district court"), *cert. denied,* —— U.S. ——, 112 S.Ct. 951, 117 L.Ed.2d 119 (1992); *Reeg v. Shaughnessy,* 570 F.2d 309, 317 (10th Cir.1978) (similar). Hence, we will not disturb the district court's finding that a witness is more than one hundred miles away, or otherwise unavailable for trial, absent a clear showing of discretion misused.

Appellant has not made such a showing. Before authorizing resort to the deposition, the district court considered Dr. Bryce's statement, made during his deposition, that he was soon to move to Wisconsin. The court also considered a letter sent by the doctor to his attorney shortly before trial in which he indicated he would be unable to leave Wisconsin in order to testify. Appellant did not then, nor does she now, dispute that Dr. Bryce had relocated, and she concedes that Wisconsin is more than one hundred miles from the New Hampshire border. This one-sided record is ample to sustain the district court's finding that Rule 32(a)(3)(B) had been satisfied.

 Appellant's rejoinder is twofold. Initially, she suggests that Rule 32(a)(3)(B) requires an evidentiary showing of unavailability. But the rule itself imposes no such condition—and we see no reason to read such a condition into it. Under ordinary circumstances, a district court possesses the power to accept, and act upon, a reliable explanation of a deponent's whereabouts without convening an evidentiary hearing.[9] *See Hartman v. United States,* 538 F.2d 1336, 1345–46 (8th Cir.1976) (upholding district court's admission of deposition solely upon deponent's uncontradicted statement, seven months before trial, that he lived more than one hundred miles from the courthouse; noting, *inter alia,* that deponent had no apparent reason to return for trial).

 Next, appellant intimates that a witness, though at the stated distance from the place of trial, is not unavailable if, with reasonable efforts, he might be persuaded to attend. But the language of the rule does not permit a court to read this sort of qualification into it. Distance is the decisive criterion: so long as a witness is shown to be more than one hundred miles from the place of trial, the admissibility of deposition testimony under the aegis of Rule 32(a)(3)(B) is not contingent upon a showing that the wit-

---

9. Appellant relies heavily on *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545 (5th Cir.1989), a case in which the Fifth Circuit upheld a district court's exclusion of deposition testimony under Rule 32(a)(3) because the proffering party "offered nothing except the plain assertion that [the deponent] was unavailable." *Id.* at 552. As recounted above, however, the facts in the case at hand are crucially different. Whereas the attorney in *Moore* "made no effort to explain the unavailability or offer some explanation to the trial court," *id.,* MMC offered an uncontroverted, entirely plausible explanation.

ness is otherwise unavailable.[10] *See Carey v. Bahama Cruise Lines, Inc.*, 864 F.2d 201, 204 n. 2 (1st Cir.1988).

 **2. Completeness.** Appellant's last line of fire is trained on the putative incompleteness of Dr. Bryce's deposition. Before advancing to the merits of this assertion, we note that the broad discretionary powers to manage cases, which are necessarily enjoyed by district courts, apply to the regulation of discovery disputes. *See Thibeault*, 960 F.2d at 242; *San Juan Dupont Plaza*, 859 F.2d at 1019. We believe that this discretion extends to determining whether a deposition is reasonably complete. Moreover, even if it is determined that a deposition is not complete, a court has the power to allow all or part of the testimony into evidence if customary standards of admissibility have been met and if no unfairness inheres. *See Lentomyynti Oy v. Medivac, Inc.*, 997 F.2d 364, 371 (7th Cir.1993); *see also* Fed.R.Evid. 611 (recognizing the district court's control over "the manner in which deposition testimony is presented"); Fed.R.Civ.P. 32(a) (providing for use of "any part or all of a deposition, so far as admissible under the rules of evidence" and directing the district court to consider "fairness" if less than all of the deposition testimony is to be admitted).

In the instant case, the court made an implicit finding that the deposition had been completed. We think such a finding is supportable. Dr. Bryce was examined on November 29, 1989. The examination was suspended after a dispute arose anent access to two memoranda. Appellant thereafter filed a motion to compel production of the memoranda, which the court granted on July 26, 1990. MMC promptly complied with the turnover order. A fair reading of the memoranda in light of appellant's line of inquiry at the deposition suggests that her attorneys declined to resume the deposition because they did not perceive that fruitful queries remained to be posed.

 Even if the deposition properly could be classified as unfinished business, we would reject the assignment of error. In the first place, the district court carefully redacted the deposition to prevent any cognizable unfairness. In the second place, if appellant, after receiving the memoranda, thought that they bore on Dr. Bryce's testimony, it was incumbent upon her to renotice and resume the deposition at some point during the nearly three years that intervened between production of the memoranda and the start of trial. We have held in various contexts that a party who does not actively pursue perceptible rights in the district court is at grave risk of waiver, and may well be barred from asserting those rights on appeal. *See, e.g., Dow v. United Bhd. of Carpenters & Joiners*, 1 F.3d 56, 61 (1st Cir.1993) (holding that plaintiffs waived any right to complain of refused discovery because, after district court declined their initial discovery request with leave to renew, plaintiffs failed to make a second request); *Reilly v. United States*, 863 F.2d 149, 168 (1st Cir.1988) (finding waiver of right to challenge judge's appointment of technical advisor). We see no reason to deviate here from our usual practice of denying relief to parties who have slept too long upon their rights.[11]

*Affirmed. Costs to appellee.*

---

10. There is, of course, an exception for cases in which "it appears that the absence of the witness was procured by the party offering the deposition." Fed.R.Civ.P. 32(a)(3)(B). This case falls outside the boundaries of that exception.

11. This practice seems fully compatible with Civil Rule 32. The rule's "general principle is to require defects in the taking of depositions to be pointed out promptly on pain of waiver" so as to "give the erring party an opportunity to correct the mistake, and to prevent waste of time and money by a subsequent claim that a deposition must be suppressed because of some technical error long ago." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2153, at 475 (1970); *cf.* Fed.R.Civ.P. 32(d)(3) (ordaining that "errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition").