USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1473

 SEAN FITZGERALD, P.P.A.
 CYNTHIA A. FITZGERALD, ET AL.,

 Plaintiffs, Appellants,

 v.

 EXPRESSWAY SEWERAGE CONSTRUCTION, INC., ET AL.,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Kravitch,* Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 John T. Landry, III, with whom Glynn and Landry was on brief,
for appellants.
 Drew M. Elinoff for appellees.

May 27, 1999

__________
*Of the Eleventh Circuit, sitting by designation. SELYA, Circuit Judge. This single-issue appeal pivots
around the evidentiary implications of the collateral source rule. 
We conclude that, notwithstanding the rule, the trial court acted
within its discretion in admitting evidence anent payments made by
the plaintiffs' health-care insurer. Consequently, we affirm the
judgment below.
 The facts of the underlying incident are of little
relevance to the issue on appeal, and we do not dwell on them. It
suffices to say that, on August 6, 1994, six-year-old Sean
Fitzgerald sustained injuries while riding on a parade float in
Kingston, Massachusetts. Sean, joined by his parents, thereafter
invoked diversity jurisdiction, see 28 U.S.C. 1332, and sued the
float's owner, Expressway Sewerage Construction, Inc., and its
operator, Roy Vaughn. The substantive law of Massachusetts
governed this suit. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78
(1938). At trial, the judge admitted the disputed evidence over
the plaintiffs' objection, and the jury subsequently returned a
verdict absolving the defendants of liability. On appeal, the
plaintiffs contend that this evidentiary ruling contravened the
collateral source rule and constituted reversible error.
 The Commonwealth's iteration of the collateral source
rule is fairly typical. It provides, in the large, that
compensation received from a third party unrelated to a tortfeasor-
defendant (the collateral source) will not diminish an injured
party's recovery from that tortfeasor. See Jones v. Wayland, 374
Mass. 249, 262, 373 N.E.2d 199, 207 (1978); Goldstein v. Gontarz,
364 Mass. 800, 809, 309 N.E.2d 196, 203 (1974). Implementation of
the rule necessarily gives rise to an evidentiary analogue. See,
e.g., Corsetti v. Stone Co., 396 Mass. 1, 16-17, 483 N.E.2d 793,
802 (1985). This analogue customarily bars the introduction of
proof of collateral source payments made to a plaintiff. See id.
("Ordinarily, a defendant may not show that the plaintiff has
received other compensation for his injury, whether from an
accident insurance policy . . . or from other sources.") (citations
and internal quotation marks omitted). An exception takes hold,
however, if evidence of payment from a collateral source is
relevant to some other material issue in the case. See id. at 17,
483 N.E.2d at 802.
 The case law sometimes confuses these interrelated
principles, moving effortlessly from the substantive to the
evidentiary strands of the collateral source doctrine, and back,
with little differentiation. See generally Joel K. Jacobsen, The
Collateral Source Rule and the Role of the Jury, 70 Or. L. Rev.
523, 525 (1991) (observing that most courts "assume, without
appearing to give the matter much thought, that the collateral
source rule functions both as a rule of evidence and as a rule of
damages," and stating that "deeming the rule hermaphroditic merely
obscures some of its more salient features and adds unnecessary
confusion"). This blurring has potentially deleterious
consequences in diversity cases, for those cases necessitate
disentangling substantive rules from procedural ones. See Daigle
v. Maine Med. Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994).
 The question raised but not clearly answered by the case
law is whether, in diversity cases, state evidentiary rules
regarding compensation from collateral sources should displace the
Federal Rules of Evidence. Compare, e.g., DeMedeiros v. Koehring
Co., 709 F.2d 734, 740-41 (1st Cir. 1983) (analyzing the
evidentiary implications of certain collateral source payments
under Fed. R. Evid. 403 in a diversity case), with McInnis v.
A.M.F., Inc., 765 F.2d 240, 245 (1st Cir. 1985) (suggesting in
dictum, in a diversity case, that by adopting the Federal Rules of
Evidence, "Congress did not intend [them] to preempt so-called
'substantive' state rules of evidence such as the . . . collateral
source rule"). Although the end result in this appeal in all
probability would be the same under either approach, we see no
valid reason to treat the evidentiary prong of the collateral
source rule differently than any other state evidentiary doctrine. 
We explain briefly.
 It is axiomatic that, when parties litigate a case in a
federal court on the basis of diversity jurisdiction, state law
supplies the substantive rules of decision. See, e.g., Blinzler v.
Marriott Int'l Inc., 81 F.3d 1148, 1151 (1st Cir. 1996); Daigle, 14
F.3d at 689. Whether damages in a tort suit are mitigable by
payments originating with a third party depends, quite obviously,
on substantive principles. Hence, the state-law collateral source
rule supplies the rule of decision.
 It is equally axiomatic, however, that federal
evidentiary rules govern in diversity cases. See Fed. R. Evid.
101, 1101(b); Cameron v. Otto Bock Orthopedic Ind., Inc., 43 F.3d
14, 18 (1st Cir. 1994). The applicability vel non of a specific
rule of evidence depends on whether Congress intended the rule to
obtain in a given context. See 19 Charles Alan Wright, et. al.,
Federal Practice and Procedure 4512 (2d ed. 1996 & Supp. 1999). 
If the federal evidentiary rule is "sufficiently broad to control
a particular issue," the court must apply it. Daigle, 14 F.3d at
689.
 So it is here: the Federal Rules of Evidence (and in
particular Rules 401, 402, and 403) are malleable enough to deal
with the principal evidentiary issues contemplated by the
collateral source rule: relevancy and unfairly prejudicial effect. 
That ends the choice-of-law inquiry. See Wright et. al., supra 
4512 ("If a Federal Rule of Evidence covers a disputed point of
evidence, the Rule is to be followed, even in diversity cases, and
state law is pertinent only if and to the extent the applicable
Evidence Rule makes it so.").
 To sum up, the Massachusetts collateral source rule must
be given full credit in this case as a rule of damages. The
evidentiary implications flowing from that rule, however, are
governed by the Federal Rules of Evidence. Thus, we disavow the
McInnis dictum and proceed to examine the challenged ruling through
a federal prism.
 The parties agree that the Commonwealth's collateral
source rule prohibits mitigating damages by the amount of first-
party insurance proceeds received. Because proof of such payments
is irrelevant to mitigation of damages (and, hence, inadmissible on
that issue), the threshold question is whether evidence of these
payments is relevant to some other contested issue in a particular
case. Consequently, we focus on whether, in the circumstances at
bar, such evidence tended to make the existence of some other fact
"of consequence to the determination of the action more or less
probable than it would be without the evidence." Fed. R. Evid.
401.
 The defendants argue here, as they did below, that
testimony by Sean Fitzgerald's mother (herself a plaintiff) on
direct examination furnished a valid basis for admitting evidence
of the insurance payments. Under questioning by her attorney, Mrs.
Fitzgerald reported that Sean's medical bills and related expenses
exceeded $20,000. The lawyer then asked her to "describe the
impact that this accident to Sean has had on your family." She
replied that the accident had imposed "quite a strain both
emotionally and financially."
 When embarking on cross-examination, defense counsel
complained that this testimonial sequence created a false
impression that medical expenses were causing financial hardship
and sought leave to show the insurance payments as an antidote. To
put matters into better perspective, the court kept the cross-
examiner on a short leash, permitting him at first to probe no
further than whether Mrs. Fitzgerald had meant that the medical
bills were a source of financial strain. Only after the witness
had responded affirmatively to that effect did the court find
evidence of the insurance payments relevant and admissible.
 We review rulings of the district court admitting or
excluding evidence for abuse of discretion. See Williams v. Drake,
146 F.3d 44, 47 (1st Cir. 1998). The court's ruling here
encompassed two subsidiary determinations: a finding that the
proffered evidence was relevant to the "financial strain" issue,
and a follow-on determination that the evidence's probative value
was not substantially overshadowed by its capacity unfairly to
prejudice the jury.
 We need not tarry over the first of these determinations. 
Under federal evidentiary standards, the relevancy hurdle is low,
see United States v. Saccoccia, 58 F.3d 754, 780 (1st Cir. 1995),
and the disputed evidence cleared it with room to spare. Mrs.
Fitzgerald's testimony made the existence and degree of financial
strain caused by Sean's medical expenses a fact of consequence in
the litigation, independent of the amount of those expenses. 
Evidence that a third party (the health-care insurer) defrayed most
of those costs cast doubt upon (and, thus, tended to undermine) the
claim that the burgeoning medical bills produced financial strain. 
The evidence was, therefore, relevant.
 The second aspect of the district court's ruling presents
a somewhat closer call. Evidence, though relevant, nonetheless
"may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice." Fed. R. Evid. 403. The
plaintiffs assert that this case falls into that category. We do
not agree.
 To be sure, introduction of collateral source evidence
almost inevitably creates a risk that a jury, informed, say, that
a plaintiff has recourse to first-party insurance proceeds, may be
unduly inclined to return either a defendant's verdict or an
artificially low damage award. This risk of prejudice is real, but
Rule 403 directs that a trial court balance it against the
evidence's probative worth, and exclude the evidence only when (and
if) the discerned risk substantially outweighs the anticipated
value.
 A trial judge has a unique coign of vantage in performing
this type of delicate balancing. In calibrating the appellate
scales, therefore, the trial judge's first-hand assessment,
reflecting his or her "feel" for the case, is entitled to
considerable deference. See United States v. Sutton, 970 F.2d
1001, 1008 (1st Cir. 1992); United States v. Tierney, 760 F.2d 382,
388 (1st Cir. 1985). "Only rarely and in extraordinarily
compelling circumstances will we, from the vista of a cold
appellate record, reverse a district court's on-the-spot judgment
concerning the relative weighing of probative value and unfair
effect." Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st
Cir. 1988).
 The circumstances here are not compelling. The relevance
of the evidence is plain and its probative value on the relevant
issue is high. Moreover, the defendants ameliorated the risk of
prejudice by making their point about the availability of other
funds with surgical precision, resisting the temptation to inflict
one thousand cuts. The lower court also took steps to dispel any
incipient prejudice by giving an immediate prophylactic instruction
(the form of which elicited no complaint from the plaintiffs). By
clarifying the limited significance of the insurance payments, the
court reduced the chance that the evidence would be misused by the
jury. See United States v. Ladd, 885 F.2d 954, 959 (1st Cir.
1989). The short of it is that, on this record, no justification
exists for us to second-guess the district court's skillful
handling of the situation.
 We need go no further. In this case, the plaintiffs
opened the door for evidence of insurance payments. Having done
so, they are hard put to complain that the defendants passed
through the portal. Applying the Federal Rules of Evidence which
furnish the benchmark for the admissibility of collateral source
evidence in a diversity action we discern no abuse of discretion
in the court's admission of the challenged evidence.

Affirmed.