Karyn CHOUINARD, Plaintiff, Appellant,

v.

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS, Defendant, Appellee.

No. 05–1160.

United States Court of Appeals, First Circuit.

Dec. 2, 2005.

Karyn Chouinard, on brief pro se.

Nancy J. Smith, Senior Assistant Attorney General, Civil Bureau, and Kelly A. Ayotte, Attorney General, on brief for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and LYNCH, Circuit Judges.

PER CURIAM.

Pro se appellant Karyn Chouinard seeks reversal of the entry of summary judgment for her employer, the New Hampshire Department of Corrections (DOC or Department), in her age-discrimination case. For the reasons stated below, we affirm the district court's decision.

Our review of the entry of summary judgment is *de novo, Rathbun v. Autozone, Inc.,* 361 F.3d 62, 66 (1st Cir.2004), and we view the record in the light most favorable to the nonmoving party. *Mesnick v. Gen-*

*eral Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). In this failure to promote case, Chouinard must first establish each of the elements of her *prima facie* case of age discrimination: that she is a member of the protected group, that she was qualified for an open position for which she applied, but she was rejected in favor of someone possessing similar qualifications. *Rathbun*, 361 F.3d at 71. The record shows that Chouinard properly established her *prima facie* case.

 Under the familiar *McDonnell Douglas* burden-shifting framework, the burden of production then shifts to the Department to articulate a legitimate, non-discriminatory reason for its adverse employment decisions. In the third and final step, the burden returns to Chouinard, who must show that the Department's proffered explanation is not the real reason for its actions, but rather is a pretext for the discrimination against her. *Mesnick v. General Electric Co.*, 950 F.2d at 823–24 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). It is at this step that Chouinard fails to carry her burden.

The following facts are not in dispute. Chouinard is a sixteen-year veteran of the Department of Corrections. She has risen through the ranks from corrections officer trainee to sergeant major, serving "inside the walls" at both women's and men's prisons and receiving generally good performance evaluations. In April 2000, Chouinard applied for a promotion to the position of Probation/Parole Officer I (PPO I). She was 42 years old.

Based on her years of service, her education, her past performance (her "factors" score) and the results of her panel interview (her "oral boards" score), Chouinard received the highest combined score of all of the candidates for the PPO I position.

The position was awarded to another female candidate, however, whose factors score was lower than Chouinard's but whose oral boards score was higher. This candidate was 30 years old.

During discovery, the Department produced evidence showing that four other candidates besides Chouinard had higher combined scores than the candidate who was chosen, and that another unsuccessful candidate also had a higher oral boards score than Chouinard. The record shows, however, that the PPO I candidate hired in April 2000 had significant relevant prior experience, an outstanding writing sample, a master's degree, immediate availability, and the enthusiastic and unanimous support of the entire panel after an "excellent" interview. At the time of her interview, in contrast, Chouinard had never worked for the DOC in a non-uniformed, "outside the walls" position or carried a firearm, and although she had completed her course work for her BS, she was not scheduled to receive her degree until June 2000, which delayed her potential starting date.

The district court correctly noted that the candidate hired was not *as* qualified as Chouinard, but rather was *more* qualified for the position. Chouinard does not dispute the fact that Departmental policy explicitly provides that the hiring authority "has wide discretion in choosing the best applicant for the job," and reserves the right to deny selection "if, in the opinion of the appointing authority, [the candidate is] deemed to lack personal or professional qualifications for promotion."

Over the next eighteen months, Chouinard applied for eight more PPO I positions. In each instance, she was granted an interview, but in each instance the job was offered to a different candidate, ranging in age from 26 to 41 years old. In

most cases the candidate selected was not the highest-ranked candidate on the list, but in every case the successful candidate had scored better on the oral boards than Chouinard. While Chouinard's factors score continued to be the highest of all of the candidates because of her years of experience, her oral board scores declined over time.

Chouinard argues that it is inconceivable that her oral boards scores would fall so precipitously on their own; in her view the only conceivable explanation is that the DOC manipulated her scores in order to prevent her from being hired because of her age. But Chouinard asks this fact to prove too much. She does not explain how her scores were manipulated. Each oral board was comprised of three members: two of whom were senior DOC officials, while the third was usually a member of the community, such as a county attorney or the director of the domestic violence program. No two boards were identical in composition, although individual members appeared on more than one board. Chouinard has not identified the person or persons who manipulated her scores, or how that manipulation was accomplished. The single affidavit Chouinard offers by a panel member is silent on this question.

Chouinard also does not explain why the oral boards scores of other, younger candidates also fluctuated, while the oral boards score of the oldest candidate, who was 58 years old and applied for six out of the same nine positions for which Chouinard applied, remained relatively constant and was usually higher than Chouinard's oral boards score. If age discrimination somehow influenced the scoring, in theory the oldest candidate would have had the lowest scores. Chouinard has simply failed to meet her burden of showing that the reasons proffered by the Department for not promoting her are not the real reasons and are, instead, a pretext for age discrimination. *Mesnick v. General Electric Co.*, 950 F.2d at 823–24 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 805 (1973)).

■ Chouinard also argues that her case should be reinstated on the basis of the recent United States Supreme Court decision in *Smith v. City of Jackson*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), which was announced after final judgment had entered for the DOC in the district court, but before opening briefs were due in this court. In the *Smith* ruling, the high court resolved a conflict among the circuits regarding whether the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), permits recovery under the disparate impact theory of discrimination. The *Smith* decision overrules *Mullin v. Raytheon Co.*, 164 F.3d 696 (1st Cir.1999), where we had held that such claims are not recognized by the ADEA. Chouinard argues that because this previously-foreclosed avenue for recovery in age discrimination cases is now open in this circuit, the judgment should be reversed and she should be given the opportunity to amend her original complaint to assert a disparate impact claim.

"It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals." *United States v. Slade*, 980 F.2d 27, 30 (1st Cir.1992). We may "relax the rule in an 'exceptional case,'" *Daigle v. Maine Medical Center*, 14 F.3d 684, 688 (1st Cir.1994), but there is no showing that this is such a case. Chouinard cannot identify a specific DOC practice or policy that disadvantaged her and other older workers, a necessary element of a disparate impact claim. *Smith*, 125 S.Ct. at 1545. Chouinard argues that the Department has an unwritten policy of deviating from its written policies to deny promotions to certain candidates when it

wishes to do so. As proof of that unwritten policy, she offers her own case as well as the case of an employee who claims he was denied a promotion because of his gender, and a second employee who claims he was denied a promotion because his supervisor was angry with him. Clearly, even indulging every inference in Chouinard's favor, these claims fail to show disparate impact on the basis of age. Even if these hiring decisions were irrational or unfair, that would not be the same as discrimination. *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 8 (1st Cir.2000); *Hildago v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir.1997).

Finally, Chouinard argues that the district court erred in granting summary judgment for the Department because the DOC's conduct during the discovery calls its credibility and truthfulness into question. The record evidences the common hallmarks and bitter aftertaste of a hard-fought case: discovery disputes that culminated in motions to compel on both sides, as well as a temporary restraining order and a finding of contempt, and continuing distrust between the parties. The record also shows, however, that both parties eventually produced the required discovery, and the documents requested by Chouinard were eventually located and were neither destroyed nor withheld, as Chouinard feared.

We do not see evidence of dishonesty or dissembling by the DOC, and we note that the even if Chouinard's claims in this regard were true, dissembling about the Department's records retention policies and procedures is not the same as dissembling about the reasons for the adverse employment action. The former is not material or relevant in determining whether discrimination occurred in this case, as the latter might be, were there any evidence that it occurred (and there is none). *See,*

*e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The record contains ample evidence supporting the Department's explanations for its promotion decisions.

**Affirmed.**