**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin T. FOSTER, Defendant–Appellant.**

**No. 93–3422.**

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1994.
Decided July 14, 1994.

Kathleen M. Sweeney (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

David J. Ryan (argued), Steckler, Perry & Ryan, Indianapolis, IN, for defendant-appellant.

Before WOOD, Jr., MANION, and ROVNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On April 28, 1993, a federal grand jury sitting in the Southern District of Indiana returned a two count indictment against Kevin T. Foster charging him with aggravated sexual abuse of a minor child in violation of 18 U.S.C. § 2241(c), and abusive sexual conduct involving a minor child in violation of 18 U.S.C. § 2244(a)(1). The prosecution sought to prove that Foster sexually abused his step-daughter Nicole, ten years old at the time of trial. Foster's theory of defense was that his wife and daughter concocted the sexual abuse story, knowing that the marriage between Foster and his wife was in trouble, to ensure that she would retain custody of their three children.

As part of that theory of defense, Foster wanted to introduce a two minute segment from an episode of the television program "60 Minutes" that Foster claimed he watched with his wife and daughter. The videotape was of several male Jehovah's Witnesses who claimed that their children, the subjects of custody battles during marriage dissolution proceedings, falsely claimed that their fathers had sexually abused them. The children quickly recanted their stories, and the authorities never filed criminal complaints against the fathers who spoke out on 60 Minutes.

On July 13, 1993, the government filed a motion in limine requesting that the trial court conduct a pretrial hearing concerning the admissibility of the videotape. The court conducted the hearing prior to jury selection on July 14, and held that the videotape was inadmissible. The court did so because: 1) pursuant to Fed.R.Evid. 401, the videotape was not relevant to any material issue, namely whether the allegations Foster's daughter made were true; 2) pursuant to Fed.R.Evid. 403, the videotape had no probative value, and admitting the videotape would unfairly prejudice the government's case and confuse the jury by causing jurors to focus on the allegations made in the videotape rather than those against Foster; and 3) pursuant to Fed.R.Evid. 801(c), the videotape contained hearsay, as the defendant was offering it in part for the truth of the matters asserted, and no hearsay exceptions applied. The court therefore instructed the defendant and his counsel not to refer to the videotape in any way in the opening statement, argument, questioning, or testimony.

At trial, the prosecution elicited the following testimony from Foster's daughter Nicole. Kevin Foster, a cook, lived with his wife Joyce, a member of the United States Army, on Fort Benjamin Harrison.[1] Foster and Joyce lived together with Foster's step-

---

1. Fort Benjamin Harrison is a special maritime and territorial jurisdiction of the United States.

daughters Nicole and Monique, and Tyrone, the two-year-old son of Foster and Joyce. On October 2, 1992, Nicole became sick at school and Joyce took her to their home at Fort Benjamin Harrison. Foster, who was not working that day, stayed at home with Nicole and Tyrone, and Joyce returned to work at the military base.

Once Joyce had left, Foster told Nicole to get into her pajamas and get into his bed. Foster then engaged in sexual intercourse with Nicole, which Nicole described in detail at trial. Nicole further claimed that while living in Japan, Foster had molested her in a similar manner on several other occasions.

It was not until January 15, 1993, when Joyce and Nicole were alone together at home, that Nicole disclosed Foster's behavior to Joyce. Joyce phoned the Fort Benjamin Harrison Military Police, who arrived shortly thereafter. Confronted by the police regarding the allegations of molestation, Foster agreed to an interview with Special Agent Wes Kilgore, Criminal Investigations Division of the United States Army (CID), in the early morning hours of January 16, 1993.

Kilgore claimed that during the interview at CID headquarters, although Foster at first claimed that Joyce fabricated the molestation story because they had been fighting over the paternity of her unborn child, he later made several incriminating statements. Those statements were: 1) "the alleged penetration took place when Nicole was laying on top of me in the bed;" 2) "I feel guilty for the God-forbidden things that I have done;" and 3) "I am guilty. Go ahead and put me in jail." Kilgore conceded that he did not tape the interview, which lasted approximately 150 minutes, and that he took only two paragraphs of notes. After the interview, Private Christopher Cummings sat with Foster in the CID waiting area and claimed to have heard Foster make additional incriminating statements, including: 1) "Apparently when she did what she did she knew what she was doing;" 2) "I didn't look at it like a female touching me;" and 3) "I tell you one thing, it will never happen again."

At the conclusion of the prosecution's case-in-chief, Foster asked the court to reconsider its preliminary finding as to the admissibility of the "60 Minutes" videotape. Foster relied on his earlier arguments, but as additional evidence noted the testimony of Nicole that she thought that her mother and Foster would not remain together. The district court denied the motion, and outside of the presence of the jury admitted the videotape into evidence for the purpose of preserving the issue for appeal.

In his defense, Foster testified that on January 14, 1993, he got into a fight with his wife and children over them eating without him the dinner he had prepared. Foster screamed at his wife and children, accusing his wife of carrying someone else's unborn child and threatening to beat his kids. Foster further testified that he and his wife had another fight the next day, which caused him to leave the house for ten minutes to cool down. When he returned, Joyce had phoned the police regarding sexual abuse of Nicole, which Foster denied. Foster further denied making any of the statements described by Special Agent Kilgore and Private Cummings.

The defense called no witnesses other than Foster, and the government called no rebuttal witnesses. On July 15, 1993, the second day of trial, the jury convicted Foster of the first count of the indictment against him, knowingly engaging in a sexual act with a person under the age of 12. On September 24, 1993, the district court sentenced Foster to 189 months imprisonment and a five-year term of supervised release to follow his term of imprisonment, as well as requiring him to pay a $1000 fine and a $50 special assessment. Foster timely filed this appeal, claiming solely that the district court erred in not allowing him to show to the jury the "60 Minutes" videotape segment.

 We will reverse the evidentiary ruling of a district court only if it has abused its discretion. *United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 1224, 127 L.Ed.2d 569 (1994). Trial courts properly may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Balancing probative value versus prejudice is a highly discretionary function to which we accord great deference. *Geitz v. Lindsey*, 893 F.2d 148, 150–51 (7th Cir.1990); *see United States v. York*, 933 F.2d 1343, 1352 (7th Cir.1991) ("Assessing the relative

impact of the legitimate and illegitimate inferences supported by evidence ... requires a contemporaneous assessment of the presentation, credibility, and impact of the challenged evidence. We therefore accord great deference to the district judge's decision to admit or exclude evidence under Rule 403."); *see also United States v. Tylkowski*, 9 F.3d 1255, 1262 (7th Cir.1993) (quoting *York*). If any reasonable person could agree with the ruling of the district court, we must defer to the judgment of that court. *Geitz*, 893 F.2d at 150–51.

■ The oral ruling the district court made against Foster on the record immediately before the trial proceeded was well reasoned and was a proper exercise of its discretion. The "60 Minutes" segment was a profile of Jehovah's Witnesses, and part of that segment presented two male Jehovah's Witnesses who claimed that during dissolution proceedings involving disputes over child custody, their children made false claims of sexual abuse against them. The district court explained that the videotape had little probative value, as Foster was not a Jehovah's Witness and neither was involved in a custody battle nor dissolution proceedings. Additionally, Foster could communicate the thrust of his defense without the videotape—that Joyce and Nicole fabricated the abuse allegations because they were angry at Foster.[2]

The district court further reasoned that the videotape had great potential to prejudice the government's case and mislead the jury. The jury likely would confuse the stories of the Jehovah's Witnesses with that of Foster, or conclude that abuse allegations generally are false and that Foster was a part of that general trend. The district court balanced what it perceived as a lack of probative value against a great risk of prejudice and concluded that it should exclude the evidence under Rule 403. A reasonable person could agree with that conclusion, *see*

*Geitz*, 893 F.2d at 150–51, and we therefore hold that the district court committed no error in excluding the videotape. The decision of the district court therefore is

AFFIRMED.

---

2. Foster complains that if the tape were in evidence, he could have countered the part of the prosecution's closing argument in which it asked the jury to consider whether Joyce and Nicole could have fabricated the detailed abuse allegations in five minutes. The jury, however, heard Foster's testimony that he, his wife, and his children had been fighting prior to the day Joyce reported his abuse of Nicole, but the jury never-theless believed that sexual abuse in fact occurred and dismissed Foster's testimony as either untrue or irrelevant. As Foster concedes, the closing argument was not error (nor did the defense object at the time) if the district court properly excluded the videotape. Because we hold that the district court did properly exclude the videotape under Rule 403, the prosecution's closing argument was not error either.