**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ramiro ADAMES, Robert Lynn Jones,**
**and Dennis Finch, Defendants–**
**Appellants.**

**Nos. 94–1095, 94–1102 and 94–1186.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1994.

Decided May 17, 1995.

K. Tate Chambers, Asst. U.S. Atty., Office of U.S. Atty., Peoria, IL, Patricia A. Tomaw (argued), Office of U.S. Atty., Springfield, IL, for plaintiff-appellee U.S.

Nancy Barohn (argued), San Antonio, TX, for defendant-appellant Ramiro Adames.

Ronald P. Guyer (argued), San Antonio, TX, for defendant-appellant Robert Lynn Jones.

Richard H. Parsons (argued), Peoria, IL, for defendant-appellant Dennis Finch.

Before FLAUM and CUDAHY, Circuit Judges, and ROSZKOWSKI, District Judge.*

ROSZKOWSKI, District Judge.

This is the consolidated appeal of the convictions of Ramiro Adames, Robert Lynn Jones, and Dennis Finch for conspiracy to

---

* The Honorable Stanley J. Roszkowski, United States District Judge for the Northern District of Illinois, Western Division, sitting by designation.

distribute marijuana, Jones' conviction for distribution of cocaine, and the sentences of Jones and Adames. For the reasons that follow, the convictions and sentences are affirmed.

## Background

In the spring of 1986, Randy Mustread and Robert Lynn Jones became partners in a marijuana distribution scheme, buying and selling small amounts of the drug. Their business grew, and in early 1987, they traveled to Dallas, Texas, where they met Dwight Bookout. Bookout introduced them to Ramiro Adames as a source for marijuana. Thereafter, they traveled to Texas periodically to purchase marijuana from Adames. They would transport the marijuana back to Illinois and store it on a farm owned by Travis Hammond. After several trips, they hired Dennis Finch to drive the van to and from Texas.

The amounts of marijuana purchased from Adames soon increased, and Adames began delivering the marijuana by semi-tractor trailer to Bookout's warehouse in Dallas. These loads were as large as 1,000 pounds, and Jones, Mustread and Finch received between 150 and 373 pounds each time.

In November 1987, Jones and Mustread traveled to Texas hoping to purchase 700 to 800 pounds of marijuana from Adames. Adames could not supply it as promised because he had been arrested while trying to purchase 1,500 pounds of marijuana from undercover narcotics agents. After his arrest, Adames introduced Jones and Mustread to his brothers, Danny and Santos, who then sold marijuana to them. During this same period, Jones and Mustread also purchased cocaine from another source. On the evening of December 23, 1987, Jones and Mustread purchased a kilogram of cocaine from two men at the Ramada Inn in Wentzville, Missouri.

Defendant–Appellants Adames, Jones and Finch, along with Bookout and Hammond, were indicted in the Central District of Illinois for conspiracy to distribute marijuana. Jones was also charged with distribution of marijuana, conspiracy to distribute cocaine, distribution of cocaine, and using drug proceeds to conduct a financial transaction. Bookout pled guilty, and the charges against Hammond were dismissed. The conspiracy to distribute cocaine and distribution of cocaine counts were severed, and after a separate trial, Jones was convicted on both counts. Defendants Jones, Adames and Finch were convicted by a jury of all remaining charges in the indictment. Adames was sentenced to 240 months imprisonment, to run concurrent with a Texas state sentence that he was serving, and 10 years supervised release. Jones was sentenced to 240 months imprisonment, 10 years supervised release, and fined $25,000. Finch was sentenced to 78 months imprisonment and four years supervised release.

The three defendants filed timely notices of appeal, asserting several errors in the trial proceedings. Defendants Adames and Jones also appeal the sentences that were imposed under the United States Sentencing Guidelines. We will address each of the issues in turn.

## The Texas Sting

In November of 1987, Adames was arrested in Texas along with five other persons unconnected to this case while attempting to purchase 1,500 pounds of marijuana from two undercover narcotics agents. This is known as the Texas sting. At trial, the district court admitted evidence of the Texas sting on the grounds that it was directly related to the marijuana distribution conspiracy charged in the indictment.

The defendants contend that the district court erred in admitting evidence of the sting. First, they argue that the Texas sting was a separate, extraneous conspiracy, and Mustread's testimony was insufficient to tie it to the marijuana distribution conspiracy charged in the indictment. They contend that the sting was introduced simply to demonstrate Adames' character as a drug dealer, evidence that is expressly prohibited by Rule 404(b). Second, they argue that even if such evidence was admissible without regard to Rule 404(b), the prejudicial effect outweighed the probative value, and, therefore, it should have been excluded pursuant to Rule 403.

Federal Rule of Evidence 404(b) allows the admission of evidence of other crimes, wrongs, or acts as "proof of motive, opportunity, intent," or other related purpose, but not to prove the character of a person in order to show an action in conformity therewith. However, Rule 404(b) does not apply when the other acts are directly related to the charged offense. *United States v. Sophie,* 900 F.2d 1064, 1076 (7th Cir.1990), *cert. denied,* 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). Other crimes or acts done to further the goals of the conspiracy are not subject to Rule 404(b) analysis. *United States v. Diaz,* 994 F.2d 393, 395 (7th Cir.1993). A district court's decision to admit "other acts" evidence as furthering the conspiracy is reviewable under an abuse of discretion standard. *United States v. Soria,* 965 F.2d 436, 440, 442 (7th Cir.1992). Of course, Rule 403 protects a defendant against the admission of evidence that is unduly prejudicial, with or without reference to Rule 404(b), and that decision is also reviewed for abuse of discretion. *Diaz,* 994 F.2d at 395.

The Government linked the Texas sting to the distribution conspiracy through the testimony of Mustread and Sergeant De La Garza, the undercover agent involved in the sting. Mustread testified that in early November 1987, he and Jones met Adames at Bookout's warehouse, expecting to receive 700 to 800 pounds of marijuana from him. Adames told them he was unable to deliver the marijuana as promised because he had been arrested in the sting. De La Garza testified that he was negotiating to sell 1,500 pounds of marijuana to Adames and two other individuals, namely Duke and Hale. Duke and Hale had enough money to purchase about 500 pounds. That left 1000 pounds for Adames, approximately the amount promised for sale to Jones and Mustread. The date of the sting and Jones and Mustread's trip to Texas also correspond.

Mustread also described the sting's effect on the distribution conspiracy with respect to the quantities and delivery of marijuana. He testified that after the sting, Adames reduced the amount of marijuana supplied to Jones and Mustread and changed the method of delivery. He introduced Jones and Mustread to his brothers, Santos and Danny. Santos then delivered marijuana to Illinois, and Jones and Mustread bought marijuana from Danny in Texas. Because Adames had money problems after his arrest, Jones and Mustread purchased a car for him in which to deliver marijuana to Illinois. Also apparently because of the arrest, Jones and Mustread helped Adames move 2,000 pounds of marijuana out of the Adames Auto Service Center for storage elsewhere.

Mustread's testimony was sufficient to link the Texas sting to the marijuana distribution conspiracy. The district court heard Mustread's testimony, observed his demeanor and determined that he was a credible witness. Credibility determinations are given the utmost deference on appeal, and we find no clear error in that determination. *United States v. Hatchett,* 31 F.3d 1411, 1418 (7th Cir.1994); *United States v. Zarnes,* 33 F.3d 1454, 1474 (7th Cir.1994). Therefore, the district court did not abuse its discretion by ruling that the Texas sting was direct evidence of the charged conspiracy and not character evidence prohibited by Rule 404(b).

Nor do we find that evidence of the sting was unduly prejudicial. As this Court has noted before, all probative evidence is prejudicial to the party against whom it is introduced. *Sophie,* 900 F.2d at 1076. But in this case, the prejudice was not unfair. The details of the Texas sting were not shocking or repulsive, such as to elicit an emotional response from the jury. *United States v. Peters,* 791 F.2d 1270, 1294 (7th Cir.1986) (evidence is unfairly prejudicial if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). Hence, the district court did not abuse its discretion by allowing testimony regarding the Texas sting.

### Material Variance Between Indictment and Proof

The defendants also argue that the admission of testimony regarding the Texas sting created a fatal variance between the

proof at trial and the conspiracy charged in the second superseding indictment. Relying on *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), they contend that where the Government alleges the existence of a single conspiracy in the indictment but presents evidence at trial proving the existence of more than one conspiracy, the variance between the indictment and proof is reversible error.

The defendants' argument is flawed whether or not the Texas sting was related to the conspiracy charged. If the transaction resulting in the sting was carried out in furtherance of the distribution conspiracy, it would be part of that conspiracy and not a separate conspiracy. The Government presented sufficient evidence to show that this was the case.

█ However, even if the Texas sting were a separate conspiracy, admitting evidence of it would not have caused a fatal variance. If the proof at trial establishes that a defendant participated in both the conspiracy charged in the indictment and another conspiracy, the variance is harmless. *United States v. Severson,* 3 F.3d 1005, 1009 (7th Cir.1993); *United States v. Townsend,* 924 F.2d 1385, 1389 (7th Cir.1991). Since there was ample evidence of the defendants' involvement in the distribution conspiracy, the evidence of the sting would have been a harmless variance. Furthermore, the jury was properly instructed that they could not convict a defendant of any conspiracy other than the one charged in the indictment.[1]

*Kotteakos* and related cases cited by defendants in support of their position are inapposite. In *Kotteakos,* there were many small conspiracies with one individual common to all of them, but no large conspiracy involving all defendants as charged in the indictment. 328 U.S. at 773–74, 66 S.Ct. at 1252. The Government in that case failed to prove the conspiracy charged in the indictment. *Id.* Such is not the case here where the Government did prove the conspiracy charged in the indictment.

## Cross–Examination of Witnesses

The defendants further claim that their ability to confront and effectively cross-examine witnesses was severely hindered by the actions of the district court, thus violating their Sixth Amendment rights and denying them a fair trial. The defendants raise three issues in this regard, and we will review each of these allegations in turn.

█ The standard of review of a court's evidentiary ruling is clear abuse of discretion. *United States v. Longfellow,* 43 F.3d 318, 322 (7th Cir.1994); *United States v. Gootee,* 34 F.3d 475, 477 (7th Cir.1994); *United States v. Saget,* 991 F.2d 702, 709 (11th Cir.1993) *cert. denied,* — U.S. —, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993). This court will not second-guess the decision of a trial judge that conforms with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one could expect a reasonable trial judge to select. *Soler v. Waite,* 989 F.2d 251, 253 (7th Cir.1993); *United States v. Williams,* 31 F.3d 522, 527 (7th Cir.1994).

█ First, the defendants contend that the district court held numerous and unnecessary hearings outside the presence of the

1. The two instructions given to the jury regarding this issue read as follows:

Court's Instruction No. 1:
You may judge a defendant only on the charge in the Indictment. You may not convict a defendant of any other alleged conspiracy in the event you should conclude that he was engaged in some other conspiracy. Therefore, if you are not convinced beyond a reasonable doubt that a defendant knowingly and intentionally joined the conspiracy alleged in the Indictment, you must find the defendant not guilty.
Court's Instruction No. 2:

Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the Indictment unless one of the several conspiracies which is proved is the single conspiracy which the Indictment charges. What you must do is determine whether the conspiracy charged in the Indictment existed between two or more persons. If you find that no such conspiracy existed, then you must acquit. However, if you are satisfied that such a conspiracy existed you must determine who were the members of that conspiracy.
To find a defendant guilty, you must find that he was a member of the conspiracy charged in the Indictment and not some other conspiracy.

jury which unfairly interrupted their cross-examination of witnesses. In addressing this issue, we note that this was a complex trial with three defendants, each having separate counsel. It lasted two weeks, during which a total of 45 witnesses testified. The government presented 30 witnesses in their case-in-chief, and three witnesses on rebuttal; the defendants presented 12 witnesses. Of the witnesses presented by the government in its case-in-chief, the court took up trial issues outside the presence of the jury during the testimony of six of those witnesses. Randy Mustread was one of those witnesses and the only witness during which the court took up more than one evidentiary matter outside the hearing and/or presence of the jury.

The court's practice of hearing matters outside the presence of the jury is in accordance with Federal Rule of Evidence 103(c), which states: "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." The obvious purpose of this rule is to prevent evidence which should be excluded from coming to the jury's attention. Fed. R.Evid. 103(c) advisory committee's note. Removing the jury from the courtroom is one way to effectuate the commands of Rule 103(c).

In a complex case of this nature with several defendants, evidentiary and procedural matters that should not be heard by the jury will undoubtedly arise with some frequency. Although a sidebar may be less time consuming or disruptive, a district court is free to utilize any procedure it deems appropriate so long as it is reasonable. Perhaps at some point the number of interruptions may reach a level where it prejudices a defendant, but the defendants have not cited any cases in which a trial court's use of such hearings was grounds for reversal. Nor does the record in this case support such a finding. The district court's decisions were well within a reasonable scope and did not impair the defendants' ability to effectively confront the witnesses.

■ The defendants' second contention is that the district court was too restrictive in the questions allowed to be asked of witnesses on cross-examination. There are three specific instances cited where the court limited cross-examination or disallowed the use of evidence. The first concerns the government's objections to questions asked by attorney Guyer of Mustread. The record reveals that the court, in sustaining the government's objections, was merely disallowing repetitive questions, a practice well within the court's discretion.

■ The second instance occurred during Attorney Parsons' cross-examination of Mustread when he sought to impeach Mustread's testimony with a prior inconsistent statement made to an agent. Parsons attempted to read directly from the agent's written summary, but the government objected. The court overruled the government's objection and allowed Parsons to continue, instructing him that if he could lay a foundation that the statement was Mustread's or had been adopted by Mustread, it could be used for impeachment purposes. When Mustread testified he did not adopt the statement, did not write it and could not say that what was in it was everything he had told the agents, attorney Parsons discontinued his line of questioning, apparently conceding that for impeachment purposes the statement of the agent was not a statement of Mustread. The court in *Saget* faced a similar issue and, basing its ruling on *Palermo v. United States*,[2] found the type of impeachment attempted by Parsons improper and a violation of Rule 613(b) of the Federal Rules of Evidence.[3] 991 F.2d at 710. The district court did not abuse its discretion by

---

2. 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

3. Federal Rule of Evidence 613(b) states: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the

same . . ." The court in *Saget* interpreted this to mean that a witness could not be impeached with a third party's interpretation or characterization of a prior oral statement (such as an FBI agent's summary) unless the witness had adopted the statement as his own. 991 F.2d at 710.

insisting that impeachment be in accordance with the Federal Rules of Evidence.[4]

■ The third instance occurred during attorney Barohn's direct examination of Agent Harmening. Barohn sought to prepare a chart in front of the jury highlighting what she characterized as inconsistencies among various debriefing reports prepared by agents Harmening, Kunard, and Wait. The district court denied Barohn's request. The court did not limit the scope of Barohn's impeachment of Mustread's testimony through Agent Harmening, but only the manner in which she sought to impeach. Considering that the chart could not be used as substantive evidence and only went to credibility, it was not an abuse of discretion to deny Barohn's request.

Finally, the defendants contend that the district court was contentious and antagonistic towards defense counsel, yet courteous and deferential to the Government, thus prejudicing the jury against the defendants. This allegation finds little support in the record. Although it is difficult to assess such claims from a cold transcript, we find nothing outrageous or shocking in the district court's conduct.

In sum, while the court may have been somewhat restrictive in controlling the presentation of evidence, there was no abuse of discretion in the evidentiary rulings made, nor did the court conduct itself in such a manner so as to unfairly prejudice the rights of the defendants.

### Evidentiary Rulings in Jones' Cocaine Trial

■ Jones contends that the district court's evidentiary rulings in his separate cocaine trial denied him the opportunity to confront and cross-examine his accusers. He first complains that the trial court erred by refusing to allow his attorney, Mr. Guyer, to question Mustread about his alleged involvement in a murder. Mustread, a cooperating government witness, had been given limited use immunity. During cross-examination,

Guyer attempted to question Mustread about the crimes subsumed within his cooperation agreement, asking him if the immunity included murder. The government objected and asked that Guyer establish that he had a good-faith basis to believe Mustread was involved in a murder.

Although Jones protests that defense counsel could provide a good-faith basis for asking Mustread about the alleged murder, the record reflects that the court excluded the questions when counsel failed to provide such a basis.[5] Since the rules of evidence require that a cross-examiner possess a good-faith basis to ask his questions, the court's ruling was proper. *United States v. Holt,* 817 F.2d 1264, 1274 (7th Cir.1987); *Oostendorp v. Khanna,* 937 F.2d 1177, 1181 (7th Cir.1991), *cert. denied,* 502 U.S. 1064, 112 S.Ct. 951, 117 L.Ed.2d 119 (1992).

■ Jones also argues that the court erred when it refused to allow Guyer to inquire of Mustread about receiving a load of marijuana on December 23, 1987. Agent Harmening stated in a report that Mustread said that he and Jones received 50 pounds of marijuana from Santos Adames on December 23, 1987, the same day the government alleged that the cocaine transaction occurred. Guyer wanted to question Mustread about the Santos Adames marijuana transaction described in Agent Harmening's report in an attempt to impeach Mustread's credibility by suggesting that Mustread could not have been in Missouri and Illinois at the same time. The problem arose because the government and Jones, in order to avoid unfair prejudice to Jones and the other defendants, had previously agreed not to mention Jones' marijuana involvement during his cocaine trial and vice-versa.

The government provided ample evidence of Jones' involvement in the cocaine transaction and the date of its occurrence. They introduced evidence of Jones' involvement through Mustread, Jimmy Cook and Gustavo Giraldo–Lara. Cook testified that he and

---

4. Attorney Parsons later called Agent Harmening as a witness to complete his impeachment of Randy Mustread.

5. In fact, the record shows that Guyer admitted he had no good faith basis to believe that Mustread had been given immunity for a murder.

Giraldo–Lara delivered a kilogram of cocaine to Mustread and Jones on the evening of December 23, 1987, at the Ramada Inn in Wentzville, Missouri. Cook knew Mustread and Jones because he had met with them earlier that December at the Summit Hotel in Dallas, Texas. Giraldo–Lara testified that he was with Cook at the Ramada Inn in Wentzville when Cook delivered a kilogram of cocaine to two males. Although he did not know the men and did not identify Jones in court, he described Mustread and Jones. Mustread testified that he and Jones purchased a kilogram of cocaine from Cook and an associate of Cook's who was introduced to him as Gustavo at the Ramada Inn in Wentzville, Missouri, on the evening of December 23, 1987. The government introduced address books, phone records and hotel receipts from the Ramada Inn and the Summit Hotel to corroborate the testimony of Cook, Mustread and Giraldo–Lara.

The court found that the marijuana transaction described in agent Harmening's report had no relevance at this trial because it would not indicate that the cocaine transaction on the 23rd did not take place. In view of the parties' agreement, the court's finding and the obvious unfair prejudicial effect the evidence could have had on Jones, the court did not abuse its discretion by excluding that evidence. In sum, the district court's evidentiary rulings in Jones' cocaine trial were proper and, as such, did not constitute a clear abuse of discretion.

### Exclusion of Videotape

■ In the marijuana distribution conspiracy trial and the cocaine trial, the defense sought to introduce into evidence a videotape of Jones' children opening gifts on Christmas morning in 1987. The district court excluded the videotape in both trials, ruling that the prejudicial effect outweighed the probative value. Jones contends that this ruling was in err.

■ Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Balancing probative value against prejudicial effect is a highly discretionary function which

is afforded great deference by this Court. *United States v. Foster,* 30 F.3d 65, 67 (7th Cir.1994). The evidentiary ruling will be reversed only if there has been a clear abuse of discretion, such that no reasonable person could agree with the district court's ruling. *United States v. Briscoe,* 896 F.2d 1476, 1490 (7th Cir.1990), *cert. denied,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); *Geitz v. Lindsey,* 893 F.2d 148, 150–51 (7th Cir.1990).

At the cocaine trial, Government witnesses testified that Jones purchased a kilogram of cocaine on December 23, 1987, in Wentzville, Missouri. Jones defended by offering affirmative evidence of alibi through his wife, who testified that he was with her on December 23 in Burlington, Iowa, shopping for Christmas gifts. Ostensibly as corroboration of her testimony, Jones sought to introduce the videotape showing their children opening those gifts on Christmas morning.

Evidence tending to show that Jones was not in Wentzville, Missouri, on December 23 would be relevant. However, a videotape of Christmas morning at the Jones' house is not evidence of his whereabouts on the 23rd. Not only was the videotape not relevant, but it would have been highly prejudicial. Scenes depicting Jones' children opening Christmas gifts would be emotionally charged and may have induced the jury to feel sympathy for Jones or his children, emotional reactions that should not factor into the jury's decision. *United States v. Vretta,* 790 F.2d 651, 655 (7th Cir.1986) (evidence is prejudicial if it will induce a jury to decide the case on an improper basis, commonly an emotional one), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986). The videotape seems to have been an attempt to evoke sympathy from the jury rather than an effort to provide any real corroboration. As such, the district court clearly did not abuse its discretion by denying its admission.

In the marijuana distribution conspiracy trial, Government witnesses testified that Santos Adames delivered a load of marijuana to Jones and the other defendants on December 24, 1987. In rebuttal, Jones' brother, Jerry, testified that he was at Jones' house on Christmas morning and did not see San-

tos Adames there. Jones sought to introduce the Christmas videotape, in which Adames did not appear, as corroboration of his brother's testimony.

Proving that Santos Adames was not at Jones' house on the morning of the 25th offers little rebuttal to the government's case. Furthermore, as the district court concluded, the videotape would not necessarily depict everyone who was at Jones' house Christmas morning and certainly wouldn't depict everyone who came to the house that day. The very limited probative value of the tape was far outweighed by its potential prejudicial effect, and, therefore, the district court did not abuse its discretion by excluding it.

### The Search of Lynard's Bike Shop

On November 9, 1992, law enforcement officers, executing a warrant of arrest in rem issued pursuant to an *ex parte* proceeding, seized Lynard's Bike Shop, which was owned by Jones and his wife. During the course of the seizure, law enforcement officers observed financial records located in the attic. Those observations were later included in the affidavit of DEA Agent Lee Philips submitted to a federal magistrate in an attempt to secure a search warrant of the property. Based on this affidavit, a warrant was issued and a search conducted of the premises. After the district court denied the defense's motion to suppress, evidence from that search (the financial records) was introduced by the government at trial.

More than a year later, the Supreme Court issued its opinion in *United States v. James Daniel Good Real Property*, —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), holding that *ex parte* seizures of real property are unconstitutional. Based on this decision, Jones made an amended motion for a new trial, contending that the search of the bike shop was unconstitutional because it was conducted pursuant to a warrant that was based in part on information obtained during an illegal seizure. The district court denied the motion, concluding that the initial seizure was unconstitutional pursuant to *Good*, but that the subsequent search was conducted by officers acting in good faith reliance on the

validity of the search warrant. The court also concluded that the affidavit in support of the search warrant stated sufficient probable cause even without the information obtained in the illegal seizure. Defendants contend that the district court erred in denying their motion to suppress the evidence obtained in the search and the subsequent motion for a new trial.

■■■■ This court will not overturn a district court's denial of a motion to suppress unless the decision was clearly erroneous. *United States v. Williams*, 945 F.2d 192, 195 (7th Cir.1991). Generally, the decision is fact based and those factual determinations require particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses. *Id.* However, any legal determinations that factor into the suppression ruling are subject to *de novo* review. *Id.* at 195–96.

The defendants contend that the seizure was illegal and, therefore, the subsequent search was illegal. Based on *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), we disagree. In *Leon*, the Supreme Court held that a search is valid if it is executed by an officer who reasonably and in good faith believes there was probable cause to issue the warrant. *Id.* at 918–23, 104 S.Ct. at 3418–21. The objective good faith standard is described as whether "a reasonably well-trained officer would have known that the search was illegal despite the judge's authorization." *United States v. Malin*, 908 F.2d 163, 166 (7th Cir.1990) (quoting *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23), *cert. denied*, 498 U.S. 991, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). Under this standard, agents are charged with having knowledge of well established legal principles. *United States v. Brown*, 832 F.2d 991, 995 (7th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 243 (1988).

■■■■ In this case, the officers could not have known that the warrant was invalid at the time it was executed because *Good* was not decided until more than a year later. In fact, until the Supreme Court's decision in *Good*, most courts allowed *ex parte* seizures

of business property. *See, e.g., United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1263 (2nd Cir.1989); *United States v. 14128 South School Street, Riverdale, Illinois,* 774 F.Supp. 475, 479 (N.D.Ill.1991); *United States v. 8215 Reese Road, Harvard, Illinois,* 803 F.Supp. 175, 177–78 (N.D.Ill.1992) ("courts faced with challenges to the seizure of business property have generally held that an *ex parte* hearing, on its own, satisfies due process"). And at least one circuit allowed *ex parte* seizures of all real property, including homes. *United States v. A Single Family Residence and Real Property,* 803 F.2d 625, 632 (11th Cir.1986). Based on the case law, the officers could have reasonably believed that an *ex parte* proceeding was sufficient to seize real property that was not a residence, such as the bike shop. Therefore, they could have in good faith believed that the subsequent search warrant, based on information from that seizure, was valid.

■ Because we hold that the agents acted in good faith under *Leon,* the defendants' other contentions concerning the search warrant are meritless. First, the defendants contend that the affidavit of agent Philips used to secure the search warrant was not made in good faith. They argue that agent Philips had access to statements made by Mustread that financial records of drug transactions were destroyed after a deal was concluded. Therefore, they contend, the agent could not have believed that any such evidence of drug transactions would be found in the bike shop. We do not agree. Mustread indicated that Jones made financial records of the drug transactions. That information, combined with what the officers observed in the attic of the bike shop, could have led officers to reasonably conclude that not all of those records had been destroyed.

■ Defendants also contend that the information contained in the affidavit was stale. Indeed, most of the information in the affidavit was several years old, but the information obtained during the seizure was sufficiently fresh that, when combined with the older information, it supported a finding of probable cause to believe that the evidence sought would be on the premises. *See Schoeneman*

*v. United States,* 317 F.2d 173, 177 (D.C.Cir. 1963); *United States v. Townsend,* 394 F.Supp. 736, 745 (E.D.Mich.1975) ("the measure of staleness is not whether recent facts support probable cause to believe a crime is committed, but whether probable cause to believe the items sought are on the premises is sufficiently fresh"). In sum, the district court did not err in denying the motion to suppress or in denying the amended motion for a new trial.

## Adames' Aggravating Role in the Conspiracy

■ At the sentencing hearing, the district court found that Adames was a manager or a supervisor in the marijuana distribution conspiracy. Because of this finding, his base offense level was upwardly adjusted by three levels pursuant to U.S.S.G. § 3B1.1(b). Adames contends that the district court erred in ruling that he played an aggravating role.

■ A defendant's role in an offense is a question of fact for the district court to determine, and such findings will be reversed only if they are clearly erroneous. *United States v. Brown,* 900 F.2d 1098, 1101 (7th Cir.1990). A finding of fact is clearly erroneous "only if after reviewing all of the evidence, the appellate court is left with the firm conviction that a mistake has been committed." *Id.* at 1102 (citations omitted). The sentence imposed by a district court will be upheld if the court correctly applied the Guidelines to findings of fact that are not clearly erroneous. *United States v. Duarte,* 950 F.2d 1255, 1262 (7th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).

In making its finding, the district court relied upon testimony at the sentencing hearing that Adames was one of the key negotiators in the Texas sting, fronted marijuana to Jones and Mustread, directed Santos and Danny Adames to deliver marijuana to Jones and Mustread, and organized the unloading of marijuana for storage in Bookout's warehouse. The court also relied upon the probation officer's presentence report. Since the district court's finding is supported by the

trial and sentencing records, it is not clearly erroneous and will be upheld by this court.

### Drug Quantities Used in Sentencing

■ In sentencing the defendants, the district court determined that Adames was responsible for approximately 5,700 pounds of marijuana and Jones was responsible for approximately 5,000 pounds of marijuana. Adames and Jones contend that the district court erred in determining the drug quantities attributable to them in calculating their base offense level. They dispute the following amounts as determined by the district court: 2000 pounds of marijuana located at the Adames Auto Center in McAllen, Texas; 1,500 pounds of marijuana from the Texas sting; 1000 pounds of marijuana that was unloaded at Bookout's warehouse in Dallas, Texas; and 50 pounds of marijuana delivered by Santos Adames on December 24, 1987.

■ Ascertaining the amount of drugs involved in a conspiracy is a factual determination and is subject to a clearly erroneous standard of review. *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). A district court's quantity determination will be upheld unless, after reviewing the record, this court is left with the firm conviction that a mistake has been made. *United States v. Hoffman*, 957 F.2d 296, 300 (7th Cir.1992), *cert. denied*, 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235 (1992).

The district court included 2000 pounds of marijuana kept in a storage area at Adames Auto Center in McAllen, Texas. The court based its finding on testimony by Mustread that he and Jones helped to load the marijuana into a van so it could be transported to another location for safe keeping. He also testified that he and Jones expected to receive a substantial portion of that marijuana but did not because of Adames' arrest.

The court included 1,500 pounds of marijuana from the Texas sting in computing Adames' offense level, and 700 of that 1,500 pounds in computing Jones' offense level. Again, the court relied upon testimony by Mustread linking the two conspiracies.

The court included 1,000 pounds of marijuana that was unloaded at Bookout's warehouse in Dallas, Texas, in computing both Jones' and Adames' offense levels. This finding was supported by the testimony of both Mustread and Bookout, who stated that the marijuana arrived at the warehouse covered with cabbage, and five people, including Jones and Adames, helped to unload it.

Finally, the court included 50 pounds of marijuana that Santos Adames transported to Illinois on December 24, 1987, and sold to Jones and Mustread. The court's finding was supported by Mustread's testimony.

The drug quantity determinations were necessarily dependent upon the testimony of Randy Mustread. The defendants attack his credibility as a witness, but the district court heard all of the testimony, observed Mustread's demeanor, and concluded otherwise. A district court's credibility determination is given the utmost deference on appeal. *United States v. Hatchett*, 31 F.3d 1411, 1418 (7th Cir.1994). The court's drug quantity determinations are supported by the record and, as such, are not clearly erroneous.

### Conclusion

For the reasons stated, we find no merit in the arguments advanced by the defendants. An examination of the record in this case reveals that the district court's conduct conformed with established legal principles, and the evidentiary rulings made were not an abuse of discretion. The judgments of conviction and the sentences imposed are AFFIRMED.