134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Paul CREWS, Defendant-Appellant.
 No. 96-4076.
 United States Court of Appeals, Seventh Circuit.
 Argued May 13, 1997.
Decided Jan. 28, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied March 11, 1998.
 
 Before Hon. JOHN L. COFFEY, Hon. FRANK H. EASTERBROOK, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 On March 20, 1996, a grand jury indicted the defendant-appellant, Paul Crews, charging that he was a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On May 30, 1996, a jury found the defendant guilty. The district court sentenced Crews to a term of 293 months of imprisonment, a five year term of supervised release, a fine of $3,000, and a special assessment of $50. On appeal, Crews contends that the trial judge abused his discretion in refusing to admit his medical records in evidence, and erred in refusing to give the jury the defendant's proposed coercion instruction. We affirm.
 
 BACKGROUND
 
 2
 The defendant met Glenda Lewis for the first time in June of 1994 when she was employed as a barmaid at Jim's South End Tavern in Olney, Illinois. The couple began dating and Crews moved in with Lewis in August of 1994. Although Crews later moved to live with his friend Bobby Joe "Smokey" Miller, Crews and Lewis remained friends. On September 23, 1995, Crews came to Lewis's house to visit. At 7:30 pm, Crews and Lewis drove to Miller's house in order that Crews could change his clothes and accompany Lewis to her work shift at the bar. While at Miller's house, Lewis observed a black revolver lying on a chair. The defendant picked the revolver up and left the room with it. Shortly thereafter, Crews and Lewis proceeded to the bar.
 
 
 3
 At approximately 9 pm during her shift that evening, Lewis once again observed the black revolver, this time protruding from the back pocket of the defendant's jeans when he bent over to shoot pool. Lewis approached the defendant and asked him to remove the gun, stating that he did not "need the trouble that was associated with the gun" and that he could either take it home or put it in her purse. Later that evening at about 10 pm, Lewis noticed that the black revolver had been placed in her purse.
 
 
 4
 At 1:15 am, the last call for the closing of the bar was announced. Two patrons, Mike Harris, Jr. and Mike Harris, Sr. purchased packaged beer for take-out and proceeded outside. After Lewis had ushered the last customers out the door and locked it, Crews approached the door and asked Lewis whether she wanted to attend an "after-hours" party. Lewis opened the door slightly to speak with Crews. At approximately the same moment, Harris, Sr. fell to the pavement in front of the bar, having been either struck by the door or pushed by a patron. Crews and Harris, Sr. argued briefly, and Crews then jumped on Harris and the two began to fight. Harris, Jr., seeing the melee from across the street, ran to his father's side and kicked Crews in the head. Several others joined in the fracas until Crews pulled out his black revolver and shot it into the air. Crews then gave the gun to Lewis, who had come outside to break up the fight. Lewis hid the gun inside the barroom. Several patrons pinned Crews to the ground, and police arrived shortly thereafter, arrested him and took him into custody.
 
 
 5
 The police recovered the revolver from Lewis and transported Crews to jail. Crews initially refused medical attention for a laceration to his lip, and when questioned, claimed to have no knowledge of the revolver and indicated that he did not wish to press battery charges against any of the individuals with whom he had been fighting. Police later transported Crews to the hospital to receive medical treatment.
 
 
 6
 After his arrest, the defendant wrote the following letter to Lewis:
 
 
 7
 ... I have to ask you to do something, and it is very important. You know at a trial they will supoena [sic] you to testify about the gun. Okay. Let's beat them to the punch. I want you to come to court on the 17th at 1:30 and testify to what happened. At closing time out front of the bar there was some kind of scuffle, and I was drunk trying to get shit quiet. And a guy ... sucker punched me with what looked like a gun. Me and him went at it, and he had some help. Suddenly I got up from the pile, fired the gun, told everyone to back off and then handed you the gun ... You knew I was out of it, but it was not my gun. Girl, it's this way, and me having a chance. Or the other way. Think, girl ... Girl, I'll never ask anything of you like this again.
 
 
 8
 A jury convicted Crews of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The defendant appeals, initially claiming that the trial judge committed an abuse of discretion when he refused to admit the defendant's hospital medical records recounting the physical injuries he sustained in the brawl. Crews further argues that he was coerced into brandishing the weapon and during the attack outside the bar, he was struck in the face with a handgun carried by one of his assailants. Faced with the threat of imminent serious bodily injury, Crews contends that he seized the gun and shot it into the air, hoping to scare the attackers and prevent them from inflicting further physical harm. Crews wished to introduce his medical records as proof of the serious bodily injury he faced, thereby justifying his use of the gun. The defendant also contends that the district court erred in refusing to issue the defendant's proposed jury instruction concerning the alleged coercion.
 
 DISCUSSION
 
 9
 Initially, this Court views this appeal as a waste of time and resources by the defendant in attempting to obtain relief. The defendant was convicted before a jury of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and nothing more. This Court has long upheld the notion that "a felon may not arm himself ... and go looking for trouble." United States v. Wheeler, 800 F.2d 100, 107 (7th Cir.1986), overruled on other grounds by United States v. Spendorio, 830 F.2d 1393 (7th Cir.1987). In establishing a prima facie case of being a felon in possession of a firearm, the Government must demonstrate that: (1) the defendant has a prior felony conviction, (2) the defendant knowingly possessed a firearm, and (3) the firearm was in or affecting interstate commerce. United States v. Williams, 33 F.3d 876, 878 (7th Cir.1994), cert. denied, 514 U.S. 1028, 115 S.Ct. 1383, 131 L.Ed.2d 236 (1995). In this case, the first and third requirements are not disputed. Concerning the second requirement, the Government has proved its case with the uncontroverted testimony of Glenda Lewis. The defendant presented no evidence to refute Lewis's testimony that she observed Crews armed with a firearm on the date in question several hours before he brandished it during the brawl outside of the tavern. Additionally, because the defendant did not testify on his own behalf, the record is barren of any testimony to contradict Lewis's statements. Thus, even if we were to hold that the trial court committed reversible error in denying the defendant's proposed jury instruction and the introduction of the defendant's medical records, the record is clear that the defendant was in possession of a gun in violation of the law. We turn to consider whether the trial judge erred in refusing to admit the defendant's medical records in evidence. The trial court's evidentiary ruling is reviewed for an abuse of discretion. United States v. Saulter, 60 F.3d 270, 275 (7th Cir.1995) (citations omitted). "An abuse of discretion generally occurs only 'where no reasonable person could take the view adopted by the trial court." ' United States v. Hughes, 970 F.2d 227, 232 (7th Cir.1992) (citation omitted). We do not agree with the defendant's theory that this circumstance involves a mixed question of law and fact that warrants a de novo review standard. In fact, the cases the defendant cites to support this claim, including Pistonbarger v. Gramley, 103 F.3d 1293 (7th Cir.1996) and Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), involve markedly different factual situations than that encountered by the defendant in the case under consideration and are distinguishable and thus are no help.
 
 
 10
 The defendant sought to have his medical records, reflecting his physical injuries, admitted in evidence in an attempt to support his theory that he was coerced into brandishing a firearm during the melee. The gist of the defendant's argument is that he was attacked outside the bar shortly after closing on the night of September 24, 1995. Crews contends that he was being seriously beaten by several people, and was struck in the face with a gun. The defendant claims that at this time, he then seized the firearm which belonged to one of his attackers, because he was facing the imminent threat of serious bodily injury. By wielding the firearm and shooting in the air, Crews hoped to prevent the assailants from doing further damage. The defendant sought to introduce the medical records, documenting the laceration to his lip, as proof of the serious bodily injury he faced during the brawl. This evidence, Crews contends, is proof to demonstrate that he was coerced, or forced, to brandish the firearm for his own self-defense.
 
 
 11
 The proceedings at trial, however, were not so clear. Crews called two witnesses to testify concerning the events on the evening in question. Crews' first witness, Randy Green, testified that he had seen the fight, but did not know who had fired the gun. The second witness, Pamela Scott, testified that although she was near the bar, she had not seen a scuffle, nor had she heard a gunshot. Neither witness offered any testimony concerning the purported injuries. After the close of testimony, the defendant moved to have the medical records admitted in evidence to establish his theory of coercion.
 
 
 12
 The Government objected to the defendant's request to have the records admitted as evidence, claiming that without additional testimony, the records were irrelevant and there existed no foundation for their admission short of a letter from Crews to Lewis, in which the defendant noted that he had been "sucker punched with a gun." The trial court sustained the Government's objection, stating: "I don't see how [the medical records] [are] relevant to any issue that is before this Court ... the issue is whether [Crews] was in possession of a firearm, not whether he was taken to the hospital or not."
 
 
 13
 We concur in the district court's ruling and hold that the medical records are irrelevant to the extent that the defendant failed to demonstrate that the injuries set forth in those records arose from being "sucker punched" with the firearm during the brawl. As noted above, the only evidence offered by the defendant to support the notion that he was struck with the gun and faced risk of serious injury was a letter he had written to Lewis after his arrest that he had been "sucker punched." The gist of the letter contradicts the testimony of each of the witnesses at trial. Lewis's uncontroverted testimony indicated that the defendant himself had been carrying the firearm for most of the evening. Further, neither the letter nor the medical records explain how the defendant specifically suffered the laceration to his lip or how the record is relevant to his coercion defense. Although we are free to surmise what the defendant should have argued to tie the records to his coercion defense, the defendant is obligated to make such an evidentiary showing in court. He failed to do so.
 
 
 14
 We further are of the opinion that the medical records, introduced without foundation, would only serve to confuse the jury and certainly would be prejudicial to the Government's case. Under Fed.R.Evid. 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues ...." In the case of United States v. Thomas, 11 F.3d 1392 (7th Cir.1993), the defendant argued that the district court erred in excluding, for the sake of jury confusion, marginally relevant evidence that she had offered to support a coercion defense. We held that "[w]hatever marginal relevance such evidence might have is clearly outweighed by the danger of confusion of the issues ...." Id. at 1399. Furthermore, trial court rulings that consider prejudicial value in determining whether or not to admit evidence at trial are given a great deal of deference. "Balancing probative value against prejudicial effect is a highly discretionary function which is afforded great deference by this Court." United States v. Adames, 56 F.3d 737, 746 (7th Cir.1995) (citation omitted), cert. denied, 517 U.S. 1250, 116 S.Ct. 2512, 135 L.Ed.2d 201 (1996).
 
 
 15
 We are of the opinion that an offering of evidence, made in this fashion without foundation, would confuse the jury and prejudice the Government's case by allowing jurors to believe that the defendant had been "sucker punched," causing him, in fear of bodily injury, to brandish the firearm. In order for the medical records to stand for the proposition that the defendant was coerced into brandishing the gun, the defendant needed corroborative testimony to demonstrate, for example, how and when his injuries occurred, whether they were incurred during the brawl (and not before or after), and whether the injuries prove that he was under fear of serious bodily injury when he chose to fire the gun into the air. Otherwise, as the Government pointed out at trial: "we don't know at what point in time [Crews] received the injuries that are referenced in that ... report. Was it after he brandished the firearm? Was it before? Was this something that happened to him at the jail ...?" This prejudicial evidence, offered without foundation, was properly rejected by the trial court.
 
 
 16
 Crews next contends that the district court erred in refusing to allow the defendant's proposed jury instruction on coercion. The defendant submitted the following coercion instruction to the court:
 
 
 17
 One of the issues in this case is whether the defendant was coerced. A defendant who has been coerced must be found not guilty. If a defendant committed the offense charged only because he reasonably feared that immediate, serious bodily harm or death would be inflicted upon him (or others) if he did not commit the offense, and he had no reasonable opportunity to avoid the injury, then he was coerced.
 
 
 18
 According to the defendant, the court's failure to provide the jury with the defendant's proposed instruction denied him the opportunity to argue an affirmative theory of defense for which there was sufficient evidentiary foundation. The trial judge found, however, that the defendant's evidentiary basis for a coercion instruction was lacking. A district court's refusal to give a proposed jury instruction is reviewed de novo. United States v. Reed, 991 F.2d 399, 400 (7th Cir.1993).
 
 
 19
 We have previously held that a defendant is deemed entitled to a jury instruction on his theory of defense if he satisfies four requirements: (1) the proposed jury instruction is a correct statement of law; (2) the theory of defense is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include the instruction would deny the defendant a fair trial. United States v. Edwards, 36 F.3d 639, 645 (7th Cir.1994). Under the second requirement provided in Edwards, Crews must furnish evidence when requesting the coercion defense theory instruction. Specifically, the coercion defense theory requires that the defendant establish: "(1) an immediate threat of death or serious bodily injury; (2) a reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to avoid the threatened harm other than by committing the criminal act charged." United States v. Sotelo, 94 F.3d 1037, 1039 (7th Cir.1996) (citations omitted). The question as to the quantum of evidence necessary has previously been considered by this Court. In United States v. Perez, 86 F.3d 735 (7th Cir.1996), we held that the defendant, charged with being a felon in possession of a firearm, was not entitled to a jury instruction on a coercion defense theory where he made the determination to carry a firearm after confusing drug enforcement agents for thieves. This Court held that a defendant "is entitled to an instruction on any defense for which there is some support in the evidence," and "the Supreme Court has made clear that the evidence must be sufficient to allow a reasonable jury to find the defense proved. " Id. at 736 (emphasis added). A jury verdict based on an unproved defense theory "is lawless, and the defendant has no right to invite the jury to act lawlessly." Id. In the instant case, the defendant has not pointed us to any evidence in the record demonstrating that he was imminently threatened with serious bodily injury or even death, or that he had no opportunity to retreat from the danger. Since the defendant did not testify on his own behalf, there is no evidence in the record to support Crews's coercion defense theory. As indicated in his letter, the defendant hoped Lewis's testimony would provide this evidence. However, Lewis rebuffed Crews in testifying that the letter did not suggest an accurate account of the brawl.
 
 
 20
 We hold that the defendant is not entitled to the coercion instruction because there is no evidence in the record from which a reasonable jury could conclude that the defendant seized the firearm during an unprovoked attack.
 
 
 21
 AFFIRMED.